## BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS *v.* BENDER.

[No. 5,012. Filed October 11, 1904. Rehearing denied March 7, 1905. Transfer denied October 4, 1905.]

1. PLEADING.—*Complaint.*—*Contracts.*—*Cancelation.*—*Mistake.*— A complaint by a contractor for the cancelation of a bid on account of a mistake, which alleges that such contractor had made a material and ruinous mistake and that by reason of the inadequate price fixed defendant had notice sufficient to put it on its guard, is not sufficient to show that the mistake was mutual. p. 170.

2. CONTRACTS.—*Bids.*—*Acceptance.*—Where the plans and specifications for a public building call for bids and provide that upon the acceptance of any bid the successful bidder shall enter into a contract for the construction of the building, the acceptance of a bid does not constitute the contract for such construction. p. 171.

3. SAME.—*Mistake.*—*Effect.*—A contract induced by a mistake which is of such fundamental character that the minds of the parties have never in fact met is wanting in mutuality. p. 171.

4. CONTRACTS.—*Cancelation.*—*Mistake.*—Where there is no gross negligence shown and no intervening rights and the parties can be placed *in statu quo,* equity will cancel a contract wanting in mutuality because of an excusable, material mistake of one of the parties. p. 172.

5. SAME.—*Schoolhouses.*—*Bids.*—*Acceptance.*—*Mistake.*—*Forfeit.* —*Equity.*—Where a contractor made his estimates for the construction of a public school building upon different pages of his estimate book, and, in his hurry to file his bid on time, he inadvertently turned two pages of such book, thus reducing the aggregate of his bid to an inadequate and ruinously low sum, and with his bid he filed his certified check as a forfeit, he is entitled to a cancelation of such bid and to a return of such check. p. 174.

From Superior Court of Marion County (63,688); *Vinson Carter,* Judge.

Suit by Conrad Bender against the Board of School Commissioners of the City of Indianapolis. From a decree for plaintiff, defendant appeals. *Affirmed.*

*Baker & Daniels,* for appellant.
*Austin F. Denny,* for appellee.

WILEY, J.—Appellee was plaintiff below, and his complaint was held good on a demurrer for want of sufficient facts, and the only question presented by the assignment of error is the sufficiency of the complaint.

The substantial averments of the complaint are that appellant had advertised for competitive bids for the erection of an addition to.one of its school buildings; that the notice published for such bids contained the following clause: "Each proposal must be accompanied by a certified check for the sum of $300 as a guaranty that the bidder will enter into a contract and file a satisfactory bond with the board of school commissioners of the city of Indianapolis, within the time specified. A failure on the part of the contractor to enter the contract will forfeit said amount or amounts deposited." It was further averred that all bids and proposals should be at the office of appellant on or be-

fore 4 o'clock p. m. of February 25, 1902; that the appellee did not see the notice as published, but that after its publication appellant's architect notified him to make estimates and to make a bid and proposal for the work according to the plans and specifications, and on the 22d day of February, 1902, furnished appellee such specifications, and informed him that his bid must be accompanied with a certified check for $300 and must be in at or before 4 o'clock p. m. of February 25, 1902; that the plans, specifications and addenda to the specifications for the construction and erection of said building contained the following provisions, to wit: "Notice to Bidders. Sealed proposals will be received for an addition to school building No. 33, corner Sterling and Twelfth streets, until 12 o'clock noon, the 25th day of February, 1902, at the office of the board of school commissioners (Library building) of the city of Indianapolis, Indiana." That the addenda to said specifications were affixed thereto, and contained on the first page thereof the following, to wit: "Bids to be opened at 8 o'clock p. m. February 25, instead of noon, as specified;" that appellee examined said specifications for no other purpose than to ascertain the description of the materials and of the work required, and that he did not read at any time the provisions in the specifications and addenda above quoted as to the time of opening said bids, and that he did not know until after the 25th day of February that he might have had until 8 o'clock p. m. of said day in which to prepare and present his bids and proposals, as aforesaid; that appellee did examine the plans and specifications, and made his estimate for all the work and material, and returned the same to the architect on said 25th day of February, 1902, after having carefully placed his estimates in his book, known and designated as his "estimate book;" that the plans and specifications further provided that bidders should make several and separate bids on certain work and material, which should be obliga-

tory on the bidders and on the appellant, and which were afterward described by appellant as "general or regular bids," and on certain other material and work therein specified, which were designated therein as "alternate basement and foundation plan," the adoption and use of bids last aforesaid to be optional with appellant; that the material and work described in said "alternate and foundation plan" were not to be required of the bidder, except at the option of appellant; that on the 25th day of February, 1902, exactly at 4 o'clock p. m., he delivered his bid in writing, signed by him, to appellant at the place designated in the notice, which bid was in the following words and figures, to wit: "Indianapolis, February 25,. 1902. Board of School Commissioners: I, the undersigned, propose to build addition to No. 33, according to plans and specifications, for the sum of $11,337. Also, additional for alternate, $3,349."

The complaint further avers that appellee relied upon and believed the architect's statement aforesaid, that said bids must be in at or before 4 o'clock p. m. of said day; that in making his said bid and proposal he intended to include therein his estimates for all material and work, including that which was optional, as well as that which was obligatory, and that he made and placed in his "estimate book" all such estimates accordingly; that the placing of his bid and estimate was delayed without any fault or negligence on his part, but solely through the delay of two of his sub-bidders, until the hour of 3:30 o'clock p. m. of said day, and that in order to get his bid and proposal filed at 4 o'clock p. m., as he understood was requisite, there was not sufficient opportunity for verification of his bids; that he erroneously submitted his bid, as aforesaid, for the obligatory and peremptory part of said work; that his bid and proposal, in order to cover and include all of said work and material, should have embraced, and was intended to embrace, his estimate for. the obligatory and peremptory material and work, as aforesaid, the sum of

$3,349, and the further sum of $1,064, each of said amounts being on separate pages of his "estimate book," in addition to said sum of $11,337, which was on a separate and distinct page thereof; that appellee's bid and proposal, in order to embrace all the material and work, should have been in the sum made up of the three amounts last aforesaid, to wit, $15,750; that appellee's estimates for his bid on the optional and alternate work and material aforesaid were in said "estimate book" on a fourth and distinctly separate page, and that his bid on said branch of said erection was intended by him to have been, and should· have been, in the sum of $1,172 instead of the sum of $3,349, as aforesaid; that, in putting into writing his form of bid and proposal, owing to the limit of time, as he understood it, it was necessary that said bid and proposal be forwarded and delivered in great haste, and that he, in so hastily making up said bid, mistook the totals on the first page of his "estimate book," to wit, $11,337, as and for his estimate for all the obligatory work and material, or, in other words, in the sum of $4,413 less than his estimates, and in that amount less than he intended and understood. It is further averred that in his haste in drafting and submitting his bid and estimate appellee mistook the amount—$3,349—which was a part of his estimate on the work and material of the obligatory part of such erection, for the amount of his estimate on said "alternate basement and foundation plan," optional with appellant, and erroneously made his bid and proposal for said optional material and work for said sum of $3,349, instead of for the sum of $1,172, or, in other words, in a sum $2,177 greater than he intended and understood; that he delivered his said bid as aforesaid without any knowledge on the part of the appellee that he might have delayed such delivery, without detriment, until 8 o'clock p. m. of the same day; that at 8 o'clock p. m. February 25, 1902, appellant opened and examined the

bid and proposal of appellee, and those of others, and found appellee's bid to be the lowest and best for the obligatory and optional work and material combined, and formally accepted said bid; that on the following day appellant, through its' architect, notified appellee of such acceptance, but that he, having discovered his mistake and error so made and committed, forthwith informed said architect concerning the same, and on the same day notified John E. Cleland, appellant's business director, that because of said mistake and error he would not and could not accept or enter into a contract for the construction of said addition; that on the 26th day of February appellee further notified appellant, in writing, to the same effect, and requested the return of the certified check, and on the 11th day of March following he again demanded of appellant the return of said certified check, or its equivalent in money, and appellant wholly refused and still refuses to return said certified check, but has cashed the same, and has converted the proceeds thereof to its own use; that appellee never assented to the making of the bid and proposal for the construction of said addition for any amount less than his estimates placed in his "estimate book," and that his mistake and error was material and ruinous, if enforced by contract, and that it is inequitable and unconscionable in appellant to take advantage of appellee's mistake and error.

The complaint then sets out a summary of the eight bids made for the construction of the addition, and such bids on obligatory and material work vary from $11,337 —appellee's bid—to $22,409; and on bids on optional material and work they vary from $3,349—appellee's bid— to $835; that the great discrepancies between appellee's bid and proposal and those of others, and especially the discrepancies between his bid and those of all others as to the optional material and work, were sufficient and reasonable notice to appellant at the time of opening and con-

sidering said bids that appellee had made a material and ruinous mistake in making his bid and proposal, and that by reason thereof appellant had notice sufficient to put it on its guard that appellee's bid and proposal were such that he had not in fact assented thereto; that if appellant had returned the certified check aforesaid, or the proceeds thereof, it would be and remain in the same condition as if appellee had not made his said bid and proposal, containing, as it did, the aforesaid material and ruinous mistake and clerical error, and that appellant has suffered no legal wrong or damage from appellee's failure to enter into contract and file bond; the work, both compulsory and optional, having been let after appellee's said notice of February 26, 1902, to Schumacher Company at $14,500 and $1,070, respectively, or in the aggregate $15,570, being the bid and proposal next higher than appellee's; that appellee is not informed and does not know whether appellant holds and retains the certified check and the avails thereof as a forfeiture or penalty, or as and for appellant's damages for appellee's failure to enter into a contract and file bond, but that the withholding and the refusal to return said check or avails, under whatever claim of appellant, is wholly inequitable and unconscionable, and that in equity and good conscience appellee's erroneous bid and proposal and appellant's acceptance thereof, should be wholly rescinded and held for naught.

The prayer of the complaint is that appellee's bid and proposal and appellant's acceptance thereof be rescinded, and that appellee's check, or the proceeds thereof, be returned or paid to appellee.

Under the facts pleaded we must determine the sufficiency of the complaint, not upon the theory of a mutual mistake, but a mistake of appellee alone. The averment in the complaint, that the discrepancies between appellee's bid and those of others were sufficient and reasonable notice that appellee had made a mate-

rial and ruinous mistake, and that by reason thereof appellant had notice sufficient to put it on its guard that appellee had not assented thereto, is not sufficient to show that the mistake was mutual.

The remaining question is: Do the facts pleaded entitle appellee to relief by reason of his own mistake? The facts show a material and ruinous mistake in appellee's bid, as submitted to appellant, and the facts constituting the mistake are specifically stated, and by them it appears that appellee's bid was $4,413 less than that made by the aggregate of his estimates. The mistake from which he asks relief is that by his hurry in submitting his bid, and which he understood had to be submitted by a definite and fixed time, he omitted to include in his aggregate, estimates upon certain parts of the work, which he had made and placed upon different pages of his "estimate book." As the demurrer admits the facts well pleaded, it is clear that appellee's bid was not what he intended it to be. In other words, he did not intend to submit a bid by which he agreed to do the work for the amount designated.

Under the facts, appellant and appellee never entered into a contract by which appellee was to do the work for a fixed compensation. By the very terms under which the bid was submitted, it was contemplated that if appellee's bid was accepted, a contract between the parties was to be entered into. By advertising for bids, and by appellee's submission of a bid, and acceptance of it by appellant, it might properly be said that a tentative or preliminary contract was made; but it was not the contract contemplated by the parties.

If there was not an *aggregatio mentium*, then there was no binding obligation. Certain it is that appellee had no intention to submit a bid for acceptance, by which he was to furnish the material and do the work for $4,413 less than the estimates he made. From the complaint it is evident that in making and submitting his

bid he did not rely upon the published notice, but upon the invitation and statements of appellant's architect. So far, therefore, as the notice for competitive bids is concerned, it can have but little, if any, influence in this connection. The complaint shows that appellant complied with the statute, and hence it was not at fault. The complaint also shows that appellee acted in good faith, for he relied upon the statements of the architect, and from the time he was invited to submit a bid his time was limited. The manner in which appellee made the mistake is specifically described, and it was one that could easily occur. He placed his estimates upon different portions of the work on separate pages of his "estimate book," and, in his hurry, he turned two pages instead of one, and thus omitted to carry forward, in his aggregate bid, a material portion of his estimate. There is one thing clear, and that is that in his own mind and judgment he did not agree to enter into a contract to furnish the material and do the work according to the plans and specifications furnished him by the architect for the amount designated by his bid. According to the facts pleaded, appellee was not negligent and careless in submitting his bid as he did.

This is not an action to reform, but to cancel what appellant assumes was a contract. In 2 Kent's Comm., *477, the following rule is declared: "Mutual consent is requisite to the creation of the contract, and it becomes binding when a proposition is made on one side and accepted on the other; and, on the other hand, it is no contract if there be an error or mistake of a fact, or in a circumstance, going to the essence of it. This is a clear principle of universal justice. *Non videntur qui errant consentire.*" It is an equitable rule declared by Mr. Kent "that he who errs is not considered as consenting." In this case the appellee erred by what appears to be an excusable mistake.

Mr. Justice Story, in his work on equity jurisprudence, speaking of mistakes as affecting contracts, says: "But where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met, or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner making redress; and no intervening rights have accrued; and the parties may still be placed *in statu quo;* equity will interfere, in its discretion, in order to prevent intolerable injustice." 1 Story, Eq. Jurisp. (10th ed.), §138i. In line with the above it is declared to be the rule "that no contract of sale is reciprocally obligatory upon the parties thereto, if it be founded upon an injurious mistake of a material fact forming the basis of the contract." Story, Law of Sales (4th ed.), §145.

A case illustrative of the principles here involved is that of *Harran* v. *Foley* (1885), 62 Wis. 584, 22 N. W. 837. In that case the plaintiff claimed to have purchased of defendant some cattle for $161.50. The defendant claimed to have intended to state the price at $261.50, and accepted $20 on the purchase price. When he was informed that the plaintiff understood the price to be $161.50, he tendered back the $20 paid. In the decision of the case, the court said: "It is evident, therefore, that the minds of the parties never met upon the question of the price to be paid for the cattle, and therefore there was, in fact, no sale. 1 Wharton, Contracts, §4. The pretended purchase having been repudiated by the defendant before the cattle were in fact delivered to the plaintiff, and the earnest money tendered back to him by the defendant, the plaintiff acquired no title to the cattle, and judgment was properly rendered against him."

So here it is evident that the minds of the parties never

met, and hence appellant acquired no rights under appellee's erroneous or mistaken bid. It is not

5. equitable, therefore, for appellant to profit by the mistake, and under the facts pleaded appellee is entitled to relief.

The demurrer to the complaint was properly overruled. Judgment affirmed.

Comstock, J., concurs in result.