**Ronald JACKSON and Willa Jackson, Appellant (Plaintiffs Below),**

v.

**Robert R. BLANCHARD, Helen M. Blanchard, Maynard L. Shellhamer, and Philip Schlemmer, Appellee (Defendants Below).**

No. 85A04–9202–CV–36.

Court of Appeals of Indiana, Fourth District.

Oct. 27, 1992.

412

Joseph W. Eddingfield, Wabash, for appellants, Ronald Jackson and Willa Jackson.

Elden E. Stoops, Jr., Daggett Schlitt & Stoops, P.C., for appellees, Robert R. Blanchard & Helen M. Blanchard.

Donald R. Metz, Tiede, Metz & Downs, Schlemmer & Shellhammer, Wabash, for appellees, Maynard L. Shellhammer and Philip Schlemmer.

MILLER, Judge.

In November of 1988, Ronald and Willa Jackson purchased the Corner Cupboard Restaurant from Phil Schlemmer and Maynard L. Shellhammer, who had recently become the latest in a series of assignees under a sales contract for the purchase of the restaurant executed between persons not parties to this action and the original owners, Bob and Helen Blanchard. After the sale, the Jacksons discovered that: (1) a certain well on the restaurant property, which all the parties assumed was operable, was in fact "plugged" and unable to supply water; (2) two other landowners were hooked into the restaurant's septic discharge line (which apparently led to frequent clogging); (3) the outflow of the septic system was illegally dumping into an open ditch; and (4) several underground petroleum storage tanks were buried on the restaurant property.

The Jacksons brought suit against both the Blanchards and Schlemmer and Shellhammer claiming fraud and, in the alternative, mutual mistake. The trial court, however, granted summary judgment to Schlemmer and Shellhammer, finding that there were no mutual mistakes of fact.

The trial court next concluded that because there was no privity of contract between the Blanchards and the Jacksons, the Blanchards were entitled to summary judgment on Jackson's claim of fraud.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Blanchards were the owners of the Corner Cupboard Restaurant, located in Wabash County, Indiana. In 1985, the Blanchards sold their restaurant on contract. After nearly three years and the substitution of various purchasers to the sales contract, Schlemmer and Shellhammer became the new assignees under the contract and took over operations of the Corner Cupboard.

In November of 1988, Schlemmer and Shellhammer sold the Corner Cupboard to the Jacksons.[1] Prior to finalizing the sale, Jackson and Schlemmer discussed a variety of matters, including the septic system and a certain well located on the restaurant property. Schlemmer told Jackson that, according to what he had been told, there was a workable well located on the property, but that neither he nor the previous owners before him had ever used it; instead, they had always purchased their water from the filling station across the street. R. at 210. Schlemmer also told Jackson that the septic system had backed up on occasion, but that, to the best of his knowledge, this problem had been fixed. R. at 240. Aside from these brief discussions, there were no other discussions between Jackson and Schlemmer about the well or the septic system. In addition, the Jacksons did not conduct an independent inspection of the well or the septic system.

It was not until the closing that the Jacksons first met the Blanchards, whose sole purpose for being there was to give the Jacksons a warranty deed to the restaurant. Prior to executing the deed, Jackson and Blanchard discussed the well.

---

1. Pursuant to the purchase agreement, the Jacksons paid cash to Schlemmer and Shellhammer's listing realtor, who placed the monies in escrow and paid off Schlemmer and Shellhammer's remaining obligation to the Blanchards. Thus, the Blanchards were not parties to this sales contract; their only interest was that the balance owed them from the previous assignment to Schlemmer and Shellhammer be paid in cash.

Blanchard explained to Jackson that there was a working well on the property, but that neither he nor Schlemmer and Shellhammer had ever used it. Essentially, Blanchard simply told Jackson what he had already been told by Schlemmer—that none of the previous owners had utilized the well and had instead purchased their water from the neighboring gas station. R. at 218.

Not long after the sale, the Jacksons discovered that an inspection of the premises might have been in order. First, after attempting to supply the restaurant with water from the well, Jackson realized that it was plugged and that his only recourse was to drill a new well. Next, after experiencing frequent problems with the septic system, Jackson discovered not only that two other landowners were hooked into the septic discharge line, but that the discharge line was illegally dumping into a lake, thus (according to a letter from the county health department), subjecting him to penalties of up to $25,000 per day. Finally, after the pavement of his parking lot started buckling, Jackson further discovered that a previous owner had buried numerous underground petroleum storage tanks throughout the restaurant property.

Feeling that they had been served a raw deal, the Jacksons filed suit against both the Blanchards and Schlemmer and Shellhammer, alleging that they had knowingly misrepresented the condition of the restaurant. In the alternative, the Jacksons sought rescission of the assignment contract from Schlemmer and Shellhammer based on mutual mistake of fact. In June, 1991, Schlemmer and Shellhammer moved for summary judgment. The trial court held a hearing on their motion on August 30, 1991,[2] at which time the Blanchards, pursuant to Ind. Trial Rule 56(B), made an oral motion for summary judgment. After hearing argument by all parties, the trial court requested the parties to submit briefs detailing their contentions and took the matter under advisement. On October 9, 1991, the trial court entered the following order:

> The Court having previously taken this cause under advisement and having heard argument of the parties, the Court now grants Judgment in favor of the Defendant Schlemmer and Shellhammer and finds that no genuine issue of material fact exists and that they are entitled to summary judgment as a matter of law.
>
> The Court further considers the matters submitted herein with regard to the Defendant's Blanchard and finds that no privity of contract existed between the Plaintiffs herein and the Defendants Blanchard and that they are also entitled to Summary Judgment as a matter of law.

R. at 272.

## DECISION

The Jacksons argue that genuine issues of material fact existed which should have prevented the trial court's grant of summary judgment against their claims of mutual mistake and fraud. On an appeal from the grant of summary judgment, we apply the same standard applicable in the trial court. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562. Before engaging in what would be our usual, somewhat mechanistic recitation of the standard of review for summary judgments, we must first point out recent amendments to T.R. 56 which significantly limit the scope of the record we, as the reviewing court, may consider when determining the propriety of summary judgment in a given case.

Prior to the 1991 amendments, a movant for summary judgment only needed to state that his motion was supported by "the pleadings, depositions, answers to interrogatories, admissions and affidavits," and then leave it to the trial court to canvass the record in order to determine if: (1) there were no issues of material fact; and (2) the movant was entitled to judgment as a matter of law. Further, when reviewing

---

**2.** The trial court had originally set the hearing date for July 30, 1991. However, because counsel for the Jacksons was suspended by our supreme court between July 15, 1991 and August 14, 1991, R. at 94, the trial court granted a continuance until August 30, 1991.

such determinations, it was common practice for this court to engage in a sweeping search of the entire record in assessing the propriety of the trial court's decision. *See, e.g., Kolczynski v. Maxton Motors, Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *trans. denied* ("summary judgment will be affirmed if it is sustainable upon any theory supported by the record").

However, on January 1, 1991, amendments to T.R. 56 significantly changed the evidentiary showing required before a moving party is entitled to summary judgment. T.R. 56(C), which sets out the basic formula for summary judgment, now provides:

At the time of filing the motion or response, *a party shall designate to the court all parts* of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters *on which it relies* for purposes of the motion. *A party opposing the motion shall also designate to the court each material issue of fact, which that party asserts precludes entry of summary judgment* and the evidence relevant thereto.... *[T]he court shall make its determination from evidentiary matter designated to the court.*

(emphasis added). In addition, T.R. 56(H) was specifically added to further impress upon us, as the reviewing court, the need for the parties to strictly comply with amended T.R. 56(C):

No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact *unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court.*

(emphasis added).

■ As the 1991 amendments now make clear, we, as the reviewing court, are

no longer free to search the entire record in determining the propriety of the trial court's grant of summary judgment. On the contrary, it is only those portions of the record that were *specifically designated* to the trial court that comprise the entire record for appellate review. The only exception to this is when we are reviewing a grant of summary judgment that had been entered in the trial court before January 1, 1991, the effective date of the 1991 amendments. In such a case, because reviewing courts must apply the same standard that was applicable in the trial courts, *see, Malachowski, supra,* 590 N.E.2d at 562, it would not be contrary to amended T.R. 56 for the reviewing court to scan the entire record in determining the propriety of the trial court's decision since this was the standard available to the trial court under the then-applicable version of T.R. 56.[3] However, in all other cases, where the trial court makes its determination under amended T.R. 56, we may affirm the trial court's grant of summary judgment using alternative legal theories only if those alternatives are found in the *designated* portions of the record. Correspondingly, we may not reverse a trial court's grant of summary judgment on the grounds that there existed genuine issues of material fact, unless the material facts and evidentiary matter in support thereof were specifically designated to the trial court. T.R. 56(H). Therefore, we agree with the observations of one scholar that "[t]he 1991 amendments to [T.R. 56] affect and qualify almost every reported Indiana appellate decision on Summary Judgment in the past twenty (20) years." 3 *William F. Harvey, Indiana Practice,* 56.7 (Supp.1992).

■ We wish to be perfectly clear about the scope of our discussion. These amend-

---

**3.** An example of just such a case is a recent decision by our supreme court in *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369. In *Stephenson,* the supreme court was reviewing a grant of summary judgment that had been ordered (and requested) in the trial court *before* the 1991 amendments to T.R. 56. (The cause number of this case in the Court of Appeals reveals that the appeal was initiated in July of 1990, six months before T.R. 56 was changed).

In setting out the appropriate standard of review for summary judgments, the court did state that "this Court will affirm a grant of summary judgment on any legal basis found in the record." *Id.* at 1371. However, this was a correct statement because the court was merely applying the same standard that was applicable in the trial court under the pre–1991 version of T.R. 56.

ments do not alter the *structural* burdens for summary judgment, *i.e.,* the burden to establish that no genuine issues of material fact exist, and that the movant is entitled to judgment as a matter of law. Neither do they change the rule that a movant for summary judgment must support his motion by a *prima facie* showing. *See, Chester v. Indianapolis* (1990), Ind.App., 553 N.E.2d 137, 141, *trans. denied.* Their sole aim is to substantially limit the scope of materials in the record the trial court may examine when determining the propriety of summary judgment and, correspondingly, what portions of the record we may properly consider on appeal.

Here, the parties designated in their summary judgment briefs to the trial court what portions of the record they were relying upon in opposition to or in favor of summary judgment. Therefore, in light of the 1991 amendments, we will only look to these portions of the record in determining whether to affirm or reverse the trial court's grant of summary judgment.[4]

### I.

■ The Jacksons argue that the trial court's grant of summary judgment for Schlemmer and Shellhammer was erroneous because genuine issues of material fact existed concerning their claim of mutual mistake. Mutual assent is a prerequisite to the creation of a contract. *Wilkin v. 1st Source Bank* (1990), Ind.App., 548 N.E.2d 170, 172 (*citing Board of School Com'rs of City of Indianapolis v. Bender* (1904), 36 Ind.App. 164, 172, 72 N.E. 154, 157). However, "where both parties share a common assumption about a *vital* fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the

exchange of values contemplated by the parties." *Id.* (emphasis added). It is not enough that both parties are mistaken about *any* fact; rather, the mistaken fact complained of must be one that is "of the essence of the agreement, the *sine qua non,* or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." 17A Am.Jur.2D *Contracts,* § 213 (1991).

Specifically, the Jacksons argue that they and Schlemmer and Shellhammer were laboring under mutual mistakes regarding the existence of a working well, the lawfulness of the septic system, and the existence of the underground storage tanks. The Jacksons contend that because these facts were material to the parties' agreement, the trial court should have granted rescission of the sales contract. In support of their argument, however, the Jacksons point us to facts that were not designated to the trial court. We reject this invitation and, instead, will look only to those materials that were specifically designated to the trial court in determining whether we must reverse the judgment of the trial court.

### A—The Well

■ The Jacksons argue that the existence of a working well was a material fact going to the heart of the agreement. Our review of the designated materials, however, shows that this is not the case. Before closing, Schlemmer told Jackson that the well would need, at a minimum, a pump and new piping. R. at 247. The Jacksons also knew that Schlemmer and Shellhammer, as well as the Blanchards before them, had never serviced the restaurant with water from the well, but instead, had purchased water from the filling station

---

**4.** This does not contradict previous holdings of this court that statements of facts set forth in a brief filed in support of or in opposition to a motion of summary judgment may not be relied upon by the trial court. *See, Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 133–34; *Schill v. Choate* (1969), 144 Ind.App. 543, 247 N.E.2d 688, 697. In those cases, one party attempted to raise issues of disputed facts in his summary judgment brief which were not contained in the appropriate types of supporting materials enumerated in Ind.T.R. 56(C), *i.e.,* pleadings, depositions, answers to interrogatories, and admissions on file. Here, the parties through their summary judgment briefs merely designated to the trial court those factual matters which were also contained in the appropriate T.R. 56(C) supporting materials (depositions and affidavits) already before the trial court.

next door. R. at 210. It was only several months after purchasing the restaurant and purchasing their water from the filling station that the Jacksons attempted to supply the restaurant with well water. R. at 212. Thus, the Jacksons knew at the time they purchased the restaurant that the well was unusable without a new pump and piping, and that until such work, they would have to purchase their water from another source. We cannot conclude that an operable well was an essential factor in the Jacksons' decision to purchase the restaurant; instead, the only thing that was essential was to them was that they would have a reliable source of water—wherever it came from. The fact that the well was actually unable to provide water, while contrary to the assumptions of both parties, was not a mistake of *material* fact.

### B—The Underground Storage Tanks

■ The Jacksons next argue that because they and Schlemmer and Shellhammer were unaware of the existence of the underground storage tanks, this constituted grounds for rescinding the contract. Again, we disagree. While the discovery of the underground storage tanks might have been an unfortunate surprise, it in no way undermined the heart of the agreement. It does not affect the suitability of the premises for the purpose of operating a restaurant—the very thing bought by the Jacksons. It may be that Jacksons will have to deal with the Indiana Department of Environmental Management regarding the proper removal of these tanks; but the fact that any inconvenience from this (if any) may be added to their operation does not prevent the restaurant from functioning as a money-making enterprise, which is precisely what the parties bargained for. We cannot say that ignorance of the existence of the underground storage tanks constituted a mutual mistake.

### C—The Septic System

■ Finally, the Jacksons contend that there was no meeting of the minds because neither party was aware of the problems with the septic system. It is not clear, however, just what the Jacksons' argument is with respect to the septic system. At one point in their appellate brief, the Jacksons intimate that they had bargained for a working septic system. Appellants' brief at 10. Later, they seem to be saying that a working and *lawful* septic system is what was bargained for. *Id.* We conclude that what the Jacksons bargained for was a functioning restaurant, not necessarily one that would avoid all infringements of the law. Thus, in order to qualify as a *material* mistake, the Jacksons must prove that any subsequently discovered conditions regarding the septic system rendered it, and the restaurant, inoperable.

We cannot conclude that these discoveries meet this standard. The Jacksons do not dispute that the restaurant's septic system is functional; their sole complaint is that the current method of discharge may subject them to civil penalties. From this alone, we could determine that the subsequently discovered problems were not material. But going further, we note that Jackson had been informed by Schlemmer prior to closing that this septic system had a potential for frequent clogging. R. at 169. Thus, if the problem the Jacksons are complaining of is a frequently backing-up septic system, we find that the conversation with Schlemmer put them on sufficient notice of this and conclude that they were not mistaken at all. The unfortunate fact that the Jacksons may face legal liability if they do not correct the discharge of the septic system does not permit us to conclude that the septic system and, correspondingly, the restaurant are non-functional.

The Jacksons attempt to buttress their argument by relying on our supreme court's decision in *Franklin v. White* (1986), Ind., 493 N.E.2d 161. In *Franklin,* the plaintiff purchased a parcel of real estate from a developer with the intention of constructing a home. Although the contract signed by the parties was silent about the issue, the developer made oral representations to the purchaser that the land was suitable for a septic system. Later, the local board of health denied the purchasers a building permit because the prop-

erty was not certified as suitable for a septic tank system. In addition, the parcel of land failed a septic percolation test conducted by a private engineering firm. The trial court granted rescission of the contract based on the mutual mistake as to the land's suitability for a septic system. In affirming both the trial court and the court of appeals on the issue of mutual mistake, our supreme court first noted that the purpose for which the plaintiffs purchased the land was to build a home. *Id.* at 164. The court then concluded that the mistake regarding the suitability of the land for a septic system was "material" because without a certification from the county health department regarding the septic system, the purchasers would not be able to construct their home, thus frustrating the purpose for which the land was bought.

It should be obvious that the only similarity between *Franklin* and the case at bar is that both involved a septic system. In contrast to *Franklin*, the subsequent discoveries by the Jacksons do not affect the very thing bought and sold—a functioning restaurant. Thus, their assertion that *Franklin* stands for the proposition that a purchaser of real estate is always entitled to rescission whenever it turns out that any assumptions upon which the purchaser may have relied were inaccurate, is itself inaccurate. As we stated earlier, it is only those mistakes which are *material* or *essential* to the parties' agreement that properly fall within the definition of mutual mistake. Having determined that none of these discoveries go to a material or essential part of the parties' agreement, we affirm the trial court's grant of summary judgment against the Jacksons' claim of mutual mistake.

## II.

The Jacksons next claim the trial court erred in concluding that no privity of contract existed between themselves and the Blanchards. What the Jacksons apparently want is another bite at the apple with respect to their claim of mutual mistake. However, even if we were to find privity of contract between these parties (which we do not), the Jacksons' claim of mutual mistake based on subsequent discoveries af-

fecting the well, septic system, and the underground storage tanks would fare no better than it did against Schlemmer and Shellhammer. Thus, the Jacksons' privity argument is, at best, inconsequential.

## III.

Finally, the Jacksons argue that the trial court erred in concluding that the lack of privity precluded their claim of fraud against the Blanchards. However, looking at the Jacksons' basis for their allegation of fraud, we again conclude that a finding of privity would not warrant reversal of the trial court.

### A—Fraud

To constitute a valid claim of fraud, the party must prove that: (1) there was a material misrepresentation of past or existing facts; (2) it was made with knowledge or reckless ignorance to falsity; and (3) the misrepresentation caused reliance to the detriment of the person relying upon it. *Comfax Co. v. North American Van Lines, Inc.*, (1992), Ind.App., 587 N.E.2d 118, 125. Here, the Jacksons baldly assert that Blanchard intentionally misrepresented the facts when he commented at the closing that the restaurant had a working well. It is clear to us that Blanchard only told Jackson what he and everyone else had simply assumed—that there was a working well on the property, but nobody had ever attempted to use it because they chose to purchase their water from the neighboring gas station. Moreover, the Jacksons put forth no evidence to the trial court that Blanchard knew or should have known that his representations were untrue. Therefore, we find this portion of the Jacksons' claim to be wholly without merit.

### B—Fraudulent Concealment

The Jacksons' second basis for fraud appears to be that the Blanchards fraudulently concealed knowledge of the septic system and the underground storage tanks. However, this ground for fraud fares no better than the first.

A prerequisite to a claim of fraudulent concealment is the existence of a duty to disclose the concealed information. *See, Central Nat. Bank of Green-*

*castle v. Shoup* (1985), Ind.App., 501 N.E.2d 1090, 1097, *reh'g denied.* However, we find no facts in the designated record to suggest that a duty was ever upon the Blanchards to disclose information to the Jacksons. Prior to the closing, there were no communications between the Jacksons and the Blanchards; on the contrary, the Jacksons' sole dealings were with Schlemmer and Shellhammer. The only contact the Jacksons had with the Blanchards was at the closing. Based on these facts, we cannot conclude that there ever arose a duty upon the Blanchards to disclose any information that they may have possessed concerning the condition of the septic system or the existence of the underground storage tanks.

Lest someone think that we have worked a grave injustice, we wish to detail the "facts" that comprise the basis of the Jacksons' claim of fraudulent concealment. The Jacksons' only evidence was that they know people who would be willing to testify that the Blanchards knew more than they let on regarding the condition of the septic system and the existence of the storage tanks. Appellants' brief at 18. The Jacksons then lament that the trial court, by granting summary judgment, took away their ability to utilize these witnesses in a full-fledged trial. *Id.* It should be obvious that if these persons were so willing to testify, it was certainly within the Jacksons' ability to take their depositions or have them submit sworn affidavits to present to the trial court some admissible evidence in opposition to the Blanchards' summary judgment motion. They did not. Instead, the Jacksons infer a conspiracy by the Blanchards with nothing more than inadmissible hearsay, and thus, the Jacksons cannot satisfy their burden to show that genuine issues of material facts existed that precluded the granting of summary judgment. The trial court did not err.

Affirmed.

CHEZEM and BARTEAU, JJ., concurring.