# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ANNE M. COATSOLONIA**
Woodward, Buls, Blaskovich & King, LLP
Merrillville, Indiana

ATTORNEY FOR APPELLEE:

**KEVIN E. STEELE**
Burke Costanza & Carberry LLP
Valparaiso, Indiana

FILED

Mar 29 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

EAST PORTER COUNTY SCHOOL ) 
CORPORATION, )
)
Appellant, )
)
vs. ) No. 64A04-1109-PL-471
)
GOUGH, INC., )
)
Appellee, )
)
and )
)
TRAVELERS CASUALTY AND )
SURETY COMPANY OF AMERICA, )
)
Appellee. )

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-0806-PL-5882

**March 29, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

East Porter County School Corporation (the "School") appeals the trial court's order entering summary judgment in favor of Gough, Inc. ("Gough") and Travelers Casualty Surety Company of America ("Travelers") and against the School. The School raises two issues, which we consolidate and restate as whether the court erred in entering summary judgment in favor of Gough and Travelers and against the School. We affirm.

The relevant facts follow.[1] The School solicited bids for certain additions and renovations in several categories.[2] The School provided notice to bidders that bids would be received until February 5, 2008, at 2:00 p.m. and that the bids would be publicly opened at 2:00 p.m. Gough submitted a bid to complete certain construction work with respect to bid category #1 (general trades) in the base bid amount of $2,997,000 and a bid bond issued by Travelers in the amount of ten percent of the bid amount. After

---

[1] The appellant's appendix filed by the School contains various documents, affidavits, and a portion of a deposition without indication of whether this evidence was designated to the trial court in connection with the parties' motions for summary judgment. We remind the parties that when reviewing summary judgment rulings, we must review only the evidence properly designated to the trial court. See Tony v. Elkhart Cnty., 918 N.E.2d 363, 365 n.1 (Ind. Ct. App. 2009). To assist this review, parties should include in their appendices the designations of evidence that were filed with the trial court. Id. (citing Filip v. Block, 879 N.E.2d 1076, 1081 (Ind. 2008) (noting Indiana Trial Rule 56(C) does not specify how or where evidence is to be designated), reh'g denied). Because the parties do not claim that undesignated material has been included in the appendix, however, we will presume for purposes of this appeal that all of the material in the appendix was properly designated.

[2] The record includes "Instructions to Bidders" which contained the following provisions:

1.12    Modification or Withdrawal of Bid Proposal

    A.    A Bidder may withdraw his bid prior to the scheduled time for the receipt of bids, without forfeiture of bid security. . . .

    B.    Bids may be modified prior to bid opening time.

    C.    After commencement of the opening of bids, no Bidder may recall his bid.

Appellant's Appendix at 67-68.

submitting the bid, Gough called the School shortly after 2:00 p.m.[3] to say that its bid was based upon a mistake and to ask that it be withdrawn.

On or about March 10, 2008, Gough was awarded the contract by the School for bid category #1. On March 17, 2008, Gough's president, Joseph Gent, sent a letter to The Skillman Corporation, a representative of the School, stating that "[t]he contract is made out in an amount that is based upon an incorrect base-bid figure," that "[t]his incorrect bid figure is the result of an in advertent [sic] clerical error that occurred at bid time," and that "Gough will not accept this contract; Gough informed the [School] in a timely manner that a mistake was made that resulted in an incorrect bid figure; prior to the bid being opened Gough made every effort to contact . . . the [School] to withdraw the bid immediately and to inform them that the bid amount was a mistake." Appellant's Appendix at 93-94. According to the letter, Gough returned the contract for the construction work to the School unsigned.

On March 24, 2008, the School approved the bid award for the project to the second lowest bidder, contingent upon Gough not responding by 12:00 p.m. on March 25, 2008, to agree to honor its bid, and the hiring of a law office to represent the School in the matter. The School submitted a claim on the bid bond to Travelers on or about April 24, 2008, and Travelers denied the claim on or about July 17, 2008.

On March 25, 2008, Gough filed a complaint for declaratory judgment against the

---

[3] In his affidavit, the president of Gough, Joseph Gent, stated that "we all thought that we made the calls . . . right before 2:00. But, yes, the reality of it is, after having the phone records, the calls were made shortly after 2:00." Appellant's Appendix at 114.

School seeking that its bid be rescinded and its bid bond released.[4] In its complaint, Gough cites to Bd. of Sch. Commr's of City of Indianapolis v. Bender, 36 Ind. App. 164, 72 N.E. 154 (1904), and states that "a contractor may be excused from a mistaken bid." Appellant's Appendix at 12. The School filed a counterclaim alleging that it had awarded the bid to Gough, that Gough returned the contract unsigned and refused to perform the work for its bid amount, that Gough was obligated to execute the contract to perform the work, that Gough's failure to execute and perform the contract was a breach of its obligations, and that the School sustained damages as a consequence of Gough's breach. The School also filed a third-party complaint against Travelers alleging that the School had submitted a claim to Travelers requesting payment of the bid bond, that Travelers denied the School's claim, that the School sustained damages as a consequence of Travelers' breach of contract, and that Travelers' denial of the School's claim constitutes bad faith. Gough filed a reply and affirmative defenses to counterclaim, and Travelers filed an answer and affirmative defenses to the third-party complaint in September 2008.

On August 20, 2010, the School filed a motion for summary judgment, memorandum of law, and designation of evidence. On December 20, 2010, Gough and Travelers filed a motion in opposition to the School's motion for summary judgment and a cross motion for summary judgment, memorandum in opposition, and affidavits.[5] On

___

[4] Gough's complaint was initially filed in Lake County but the case was later transferred to Porter County.

[5] The summary judgment pleadings filed with the trial court by the parties are not included in the record.

4

March 22, 2011, the court held a hearing at which the parties presented arguments on the summary judgment motions, and on August 12, 2011, the court issued an order citing to Bd. of Sch. Commr's of City of Indianapolis v. Bender, 36 Ind. App. 164, 72 N.E. 154 (1904), trans. denied, and entering summary judgment in favor of Gough and Travelers and against the School.

The issue is whether the trial court erred in entering summary judgment in favor of Gough and Travelers and against the School. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 633 (Ind. 1991).

A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 975 (Ind. 2005). If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the

5

movant's motion. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002).

The fact that the parties make cross motions for summary judgment does not alter our standard of review. Hartford Acc. & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind. Ct. App. 1997), trans. denied. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id. The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

The School contends that "Indiana law dictates that Gough, as the lowest bidder on a public works project, cannot rescind its bid." Appellant's Brief at 11. The School cites to Bender, 36 Ind. App. 164, 72 N.E. 154, and argues that the opinion is not applicable due to its age, the fact that it pre-dated the current public bidding statute, "the relief offered is equitable," and that the case is distinguishable because it concerned a mathematical error and not "procrastination and carelessness." Appellant's Brief at 12. The School asserts that "[t]he court must decide who should pay for the mistake: the bidder that made the error or the taxpayers." Id. at 13. The School further argues that persuasive law from other jurisdictions and public policy dictate that Gough cannot

6

rescind its bid. The School also argues that the court erred in failing to apply the bid bond statute and "instead, misapplied equity." Id. at 19.

Gough and Travelers maintain that Indiana law permits the withdrawal of a bid based upon the bidder's error and notes that this court cited to Bender with approval in Mid-States Gen. and Mech. Contracting Corp. v. Town of Goodland, 811 N.E.2d 425 (Ind. Ct. App. 2004), and that public bidding statutes have existed in Indiana since "the late 1800's." Appellees' Brief at 6. Gough and Travelers further argue that "[c]ontrary to the contention of [the School], a mathematical error is what occurred in this case," that "Gough did not misinterpret part of the specifications for the project; rather it made a mistake in the final calculation of the bid total," that "Gough made a mistake in the presentation of its bid to [the School]," and that "[d]uring the rush to complete the bid, Gough misreported the bid amount to its representative at the bid opening." Id. at 6-7. Gough and Travelers further argue that law from other jurisdictions supports their position and that public policy does not dictate a different result. Gough and Travelers also argue that the court did not err in finding that Travelers cannot be bound if its principal Gough is released from its bid.

In its reply brief, the School argues that the court's reliance on Bender and grant of equitable relief was in error, that the public bidding statutes at the time of Bender did not dictate detailed procedures including the mandatory bid bond provision, that the instructions to bidders here provided unambiguous language regarding the withdrawal of bids and support forfeiture of the bid bond, and that this court must rectify the trial court's holding regarding the bid security.

In <u>Mid-States Gen.</u>, this court summarized the facts of <u>Bender</u>:

> In <u>Bender</u>, the school board advertised for bids for an addition to a school building.  [36 Ind. App.] at 165, 72 N.E. at 155.  Bender obtained the specifications for the work and was informed that his bid had to be submitted by 4:00 p.m. on February 25, 1902.  <u>Id.</u> at 166, 72 N.E. at 155.  Two subcontractors did not provide Bender with their estimates until 3:30 p.m., and in hastily finalizing his bid, Bender miscalculated.  <u>Id.</u> at 167, 72 N.E. at 155.  Bender bid $11,337 to perform the work, but he would have bid $15,750 if he had made an accurate calculation.  <u>Id.</u> at 168, 72 N.E. at 156.  After submitting his bid, Bender learned that he had been misinformed and bids were not required to be submitted until 8:00 p.m.  <u>Id.</u> at 168, 72 N.E. at 155.  Bender's bid was the lowest, and the school board accepted the bid.  <u>Id.</u> at 168-169, 72 N.E. at 155.  The next day, Bender realized his miscalculation and informed the school board that he could not enter into a contract for his bid amount.  <u>Id.</u> at 169, 72 N.E. at 155.

> On appeal, this court held:

> There is one thing clear, and that is that in his own mind and judgment [Bender] did not agree to enter into a contract to furnish the material and do the work according to the plans and specifications furnished him by the architect, for the amount designated by his bid.  According to the facts pleaded, [Bender] was not negligent and careless in submitting his bid as he did.

<u>Id.</u> at 172, 72 N.E. at 157.  This court noted that Bender's error appeared to be an excusable mistake and added that:

> "But where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistakes or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into the error or in not sooner making redress, and no intervening rights have accrued, and the parties may still be placed in statu (sic) quo, equity will interfere, in its discretion, in order to prevent intolerable injustice."  In line with the above it is declared to be the rule "that no contract of sale is reciprocally obligatory upon parties thereto, if it be founded upon an injurious mistake of a material fact forming the basis of the contract."

Id. at 173, 72 N.E. at 157 (internal citations omitted). Consequently, this court held that it was "evident that the minds of the parties never met" and that the school board "acquired no rights under [Bender's] erroneous or mistaken bid." Id. at 173-174, 72 N.E. 154, 34 Ind. App. 420, 72 N.E. 158.

811 N.E.2d at 434.

In Mid-States Gen., we found Bender distinguishable because, unlike Bender, Mid-States did not argue that it miscalculated in preparing its bid, and that thus the reasoning behind Bender was inapplicable. Id. Rather, Mid-States argued that the bid documents were ambiguous and that it reasonably interpreted the bid documents, and we concluded that the documents were not ambiguous and that Mid-States' interpretation was not reasonable. Id. This court also found that equity did not intervene to rescind Mid-States' bid and bid bond because Mid-States did not argue and the designated evidence did not suggest that mutual mistake was applicable and Mid-States did not allege fraud or inequitable conduct on the part of the Town. Id. at 435. This court further noted the treatment of bid mistakes in other jurisdictions and stated that the general rule is that "[b]id errors that result from clear cut clerical or arithmetic errors[6] or a misreading of the specifications are the kind of excusable mistake that allows relief." Id. (citing Liebherr Crane Corp. v. United States, 810 F.2d 1153, 1157 (Fed. Cir. 1987)). "Mistakes of judgment, on the other hand, do not qualify for such relief." Id. This court further stated that generally the misinterpretation of an unambiguous contract has been held to be a mistake of judgment. Id.

---

[6] See also Harrison, David B., *Right of Bidder for State or Municipal Contract to Rescind Bid on Ground that Bid was Based upon His Own Mistake or that of His Employee,* 2 A.L.R.4th 991 (discussing the right to rescind a bid for a mistake of fact, such as a mathematical error).

9

Here, the School provided notice to bidders that bids would be received until February 5, 2008, at 2:00 p.m. and that the bids would be publicly opened at 2:00 p.m. In his affidavit, Joseph Gent, Gough's president, stated that "Gough was working on its bid numbers in the hours immediately preceding the bid opening," that "[b]ids were solicited from necessary subcontractors and material suppliers," that "Gough prepared an in-house price for work categories performed by its employees and equipment," that "[a] bid summary sheet was prepared and the best bids in each category were entered into the sheet in the appropriate row," that "[t]his summary was continuously updated as bids were received," that "[s]uch bids were being received right up to the bid deadline," and that "[a]s is often the case, it was a very chaotic time at Gough." Appellant's Appendix at 97. Gent further stated that, at approximately 1:30 p.m., he and two other individuals, Buzz Gough and Ken Akey, met "to decide what Gough's bid would be for the project," that "[p]rior to this meeting, a Gough employee, Ross Martin, was sent to the bid opening location," and that "[a]s is Gough's normal procedure, the final bid number would be telephoned to [Martin] as close to the bid time as possible." Id. at 97-98.

Gent further stated in his affidavit that the final total in the summary sheet prepared by Gough was $3,331,763.00, and that, after the individuals at the meeting agreed that $30,000.00 "could be cut from the bid" due to a previous discussion with the excavation estimator, "the mental adjustment to the price was made, leaving the bid at $3,301,763.00." Id. at 98. Gent stated that the individuals "then discussed the bid amount being $3,300,000.00 as a threshold number that we would like to get below for psychological reasons," that Gough "was under extreme pressure to complete the

10

calculation of its bid amount immediately," that "[t]he discussion continued at the meeting as to getting the bid below $3,300,000.00." Id. at 98-99. Gent "stated that Gough needed to be at '299,'" that he "made no reference to thousands, just used the number '299,'" that the "comment was made at the meeting that $1,000.00 should be cut off to get below the threshold," and that at that time he said "let's make the bid '2998.'" Id. at 99. Gent stated that Akey "then wrote down the bid as $2,998,000.00," that he said "Gough should knock another $100.00 off the bid for good measure," and that Akey "wrote down an adjusted bid of $2,997,900.00." Id. Akey then "immediately gave [] Martin the figure of $2,997,900.00 as Gough's bid." Id. Gent stated that "[t]his entire process occurred within a very short time frame, probably less than two minutes" and that "[t]he discussion took place very quickly with all of the calculations being performed mentally." Id.

Gent also stated that Martin wrote down the bid number on the bid submission package and submitted it to the School's representative at 1:53 p.m. and that "[m]eanwhile, after [Buzz] Gough and [Gent] had left his office, [] Akey was reviewing the bid numbers" and "realized that too much had been cut off the bid and immediately attempted to contact [] Martin to pull the bid." Id. Akey called Gent and Buzz Gough back into the room and explained what had happened, they realized "that this would result in over a $200,000 loss on the project," and "[t]hereafter, Gough immediately started trying to contact [] Martin, the [School] and its representative, Skillman Corporation, to inform them that Gough's bid was based upon a serious mistake and the bid should be withdrawn because Gough could not complete the project for the quoted

11

price." Id. at 100. Martin stepped out of the bid meeting and called the Gough office, and a Gough employee "told [] Martin to tell Joe Sparks of Skillman to call Ken Akey in Gough's office right away." Id. Upon conclusion of the bid opening meeting, Martin approached Sparks and "asked him to call Gough's office immediately" and "[i]n the meantime, Gough was attempting to contact the [School] and Skillman" but "[u]nfortunately, no one answered at either [of] these entities." Id. Gent stated that "[u]pon being contacted by [the School's] representative, Gough informed it of the error and asked that its bid be withdrawn" and "[i]nstead, [the School] and its representative tried to force Gough to enter into a contract." Id.

Gent's deposition testimony regarding what had occurred at the meeting prior to the submission of Gough's bid and how he, Buzz Gough, and Akey arrived at the bid amount later communicated to Martin is consistent with the statements in his affidavit. Also in his deposition, Gent testified "we made the mental mistake, mental calculation or mental misplacement of the digit and ma[d]e the mistake in writing [the bid amount] down." Id. at 104. With respect to the bid summary sheet prepared by Gough, when asked "is there any mathematical error on that spread sheet," Gent stated "[n]ot that I'm aware of, no." Id. at 106. When asked "the figure of 2,997,900 submitted as the base bid, that was the number that was actually told to the Gough employee at the bid to write in," Gent testified:

> This is the number that [Akey] had given to our employee in the field after he mistakenly misplaced where he was going to do the cut on the number, and he wrote down on his paper instead of 3,298,000, he wrote down $2,998,000, and then he . . . sent that number on to [Martin] after he had made the mistake on his paper . . . .

12

Id. at 107. When asked "[s]o there was not an addition or subtraction error or any miscomputation, is that a fair statement, on this bid," Gent testified:

> There was an error . . . in as much as we intended to knock off $32,000 and we knocked off $332,000 on the bid. Call it what you want. It's an error. It's a mistake. We were trying to adjust our price to just below . . . 3,300,000, and ended up sliding over and adjusting it to below 2,998,000. It's stupid. It was careless. It was a mistake. It was a mistake made at the time that we were trying to get the bid submitted and in a short period of time in which we had to make adjustments.

Id. at 108-109. With respect to the phone calls made by Gough in an attempt to withdraw the bid, Gent testified that "[a] lot was going on and we all thought that we made the calls . . . right before 2:00. But, yes, the reality of it is, after having the phone records, the calls were made shortly after 2:00." Id. at 114. The affidavit of Rod Gardin, the superintendent of the School, in the record does not contradict Gent's testimony.

We find that, like in Bender, where the court found that it was clear that the bidder did not agree to enter into a contract to furnish the material and do the work according to the plans and specifications for the amount designated by his bid, see Bender, 36 Ind. at 172, 72 N.E. at 157, the affidavits and materials included in the record here demonstrate that Gough did not at any time intend to enter an agreement or contract with the School to complete the work contemplated for bid category #1 for the amount specified by its bid.

The implication of the mistake or error by Gough when Akey reduced to writing a verbal statement by Gent regarding the ultimate base bid amount, resulting in an unintended bid amount being communicated to Martin, which differed substantially from the intended bid amount, is that the minds of the parties never in fact met and that one of the parties, namely, the School, would obtain an unconscionable advantage gained by the

13

mistake or error. See id. at 173, 72 N.E. at 157 (noting that "[b]ut where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistakes . . . and the parties may still be placed in statu[s] quo, equity will interfere, in its discretion, in order to prevent intolerable injustice") (internal citations omitted); see also Conwell v. Gray Loon Outdoor Mktg. Grp., Inc., 906 N.E.2d 805, 812-813 (Ind. 2009) (noting that the "basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties").

Further, we observe that, like in Bender, where the bidder realized his mistake and informed the school board that he could not enter into a contract for his bid amount on the day following the bid, see 36 Ind. App. at 169, 72 N.E. at 155, Gough informed the School and its representative Skillman within a short time after the bid meeting concluded that it had submitted a bid proposal which was based upon a mistake and that Gough could not complete the project for the quoted price. The School does not point to evidence to show that it relied upon Gough's erroneous bid amount in a manner which would cause the withdrawal of the bid a short time later and on the same day to be inequitable, unconscionable, or unjust.

In addition, this court has observed that "[t]he general rule is that [b]id errors that result from clear cut clerical or arithmetic errors . . . are the kind of excusable mistake that allows relief" and that "[m]istakes of judgment, on the other hand, do not qualify for such relief." Mid-States Gen., 811 N.E.2d at 435 (citation and internal quotation marks omitted). We cannot conclude that the mistake made when Akey reduced a verbal

14

statement by Gent to writing (which was later communicated to Martin) regarding the reduction of the base bid amount constituted a mistake in judgment which would prevent Gough from withdrawing its bid or that the bid amount that Gough had decided to submit and communicated to Martin was its intended bid amount. See Harrison, David B., Annotation, *Right of Bidder for State or Municipal Contract to Rescind Bid on Ground that Bid was Based upon His Own Mistake or that of His Employee,* 2 A.L.R.4th 991, § 3 (1980) (reviewing cases where courts have granted a request to rescind a bid on a public contract where a mistake was material to the transaction and the public body was informed of the mistake promptly upon its discovery); Powder Horn Constructors, Inc. v. City of Florence, 754 P.2d 356, 359-361 (Colo. 1988) (observing the substantial body of law which in effect concludes "that where a bidder submits a bid containing a material mistake of fact and the bid is apparently accepted there has not been any meeting of the minds because the bid accepted by the public entity is not the bid intended by the bidder" and that "many courts, commentators and legislative bodies have either explicitly or implicitly recognized that a mathematical or clerical error yields an unintended bid, while an error in judgment, such as an error in estimating the number of hours of work necessary to complete a project, yields precisely the bid intended and is not deemed a mistaken bid," and discussing the various competing policy concerns involved in permitting a bidder for a public construction project to rescind its bid based upon a mistake) (citations omitted); Miss. State Bldg. Comm'n v. Becknell Const., Inc., 329 So.2d 57, 62 (Miss. 1976) (observing that the record supported the finding that the bidder made an honest mistake in its bid and promptly notified the public body of the character

of the mistake and affirming the trial court's order permitting the bidder to withdraw its bid without penalty); cf. Liebherr Crane Corp., 810 F.2d at 1157 (noting that there was "no difference . . . between Liebherr's intended bid and the bid Liebherr actually submitted," that "[o]n behalf of Liebherr[,] Schiller bid exactly what he had decided to bid," and that "[i]n other words, he did not establish that he committed any clerical or arithmetical errors in preparing Liebherr's bid").

Based upon the record and under the circumstances presented in this case, we conclude that it is evident that there was not a meeting of the minds regarding the bid amount and thus that the School did not acquire the right to enforce Gough's erroneous or mistaken bid.

Further, we agree with the trial court that "Travelers should be released from its Bid Bond because its principal does not have any liability on the underlying contract." Appellant's Appendix at 9. See Jobco, Inc. v. Nassau Cnty., 129 A.D.2d 614, 615, 514 N.Y.S.2d 108 (1987) (noting that the trial court had granted rescission, finding that a clerical error was material and occurred despite the exercise of ordinary care by the bidder, and holding that "[t]he trial court properly determined that the bid bond, which, by the terms of the bid documents, was required 'as assurance that the bid is made in good faith', should not be forfeited by the [bidder], the 'no plea of mistake' provision of the bid documents notwithstanding, since rescission having been granted, the bidder was legally excused from entering into the contract and, thus, the absence of the underlying obligation vitiated any contractual obligations arising therefrom"); Miss. State Bldg.

Comm'n, 329 So.2d at 59 (affirming the trial court's finding that the bid bond be cancelled as the bid was permitted to be withdrawn without penalty).

Accordingly, the court did not err in entering summary judgment in favor of Gough and Travelers and against the School. For the foregoing reasons, we affirm the court's August 12, 2011 ruling on the parties' motions for summary judgment.

Affirmed.

MAY, J., and CRONE, J., concur.