MID–STATES GENERAL & MECHANICAL CONTRACTING CORPORATION, Appellant–Defendant,

v.

TOWN OF GOODLAND,
Appellee–Plaintiff.

No. 86A03–0312–CV–500.

Court of Appeals of Indiana.

July 6, 2004.

Thomas A. Withrow, Kerry L. Wagner, Henderson Daily Withrow & DeVoe, In-

dianapolis, IN, John A. Rader, Williamsport, IN, Attorneys for Appellant.

Judson G. Barce, Hunter J. Reece, Barce & Barce, Fowler, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Mid–States General & Mechanical Contracting Corporation ("Mid–States") appeals the trial court's grant of summary judgment to the Town of Goodland ("Town"). Mid–States raises three issues, which we consolidate and restate as:

I. Whether Mid–States is entitled to rescind its bid and bid bond because of its misinterpretation of the bid documents; and

II. Whether the contract is void because the Town Council failed to meet certain procedural requirements in awarding the contract.

We affirm.

The relevant facts designated by the parties follow. In late 2001, the Goodland Town Council ("Town Council") began the process of requesting bids for the renovation of an elementary school building into a town hall, community center, and daycare. The Town Council discovered that the first group of bids were over budget and decided to modify the bidding process by requiring bidders to break down their bid into one lump sum for the majority of the work and four smaller optional alternate projects that could be completed if funding was available. On January 16, 2002, the Town Council published an Invitation to Bid, which informed bidders that copies of the plans and specifications for the project were available at the offices of KJG Architecture, Inc. ("KJG"). The Invitation to Bid also informed the bidders that there were two divisions to the contract: (1) Division A, which consisted of the renovation for the daycare center and community center; and (2) Division B, which consisted of the renovation for the town hall. The Invitation to Bid also required proposals to be accompanied by a bid bond of not less than five percent of the total amount of the proposal.

The Bid Notice provided that "[b]ids shall be on a stipulated sum basis; segregated bids will not be accepted." Appellant's Appendix at 174. The bid documents for the project included "Addendum # 1: Document 00410—Bid Form," which contained the following form that the bidders were required to complete:

1.3 The undersigned will complete the Work in accordance with the Contract Documents for the following prices:

STIPULATED–SUM
BID PRICE · _____ ($_____)

(Use words) (Figures)

**ALTERNATES**

Add Alternate No. 1 (Demolition and renovation of the locker room area in the Community Center in scope of work B)

Add ($_____)

Add Alternate No. 2 (Add 5–foot sidewalk in scope of work B)

Add ($_____)

Add Alternate No. 3 (Demolition and renovation of the restroom to meet ADA requirements in the Goodland Town hall in scope of work A)

Add ($_____)

Add Alternate No. 4 (Add radiant heaters to three daycare classrooms as shown on plans and any wiring required for installation in scope of work B)

Add ($_____)

**ALLOWANCES**

| | |
|---|---|
| Allowance # 1 (Contingency allowance) | $_____ |
| Allowance # 2 (Carpet allowance) | $_____ |
| Allowance # 3 (Clean and abate mold) | $_____ |
| Allowance # 4 (Utility company charges) | $_____ |
| Allowance # 5 (Hardware allowance) | $_____ |
| Allowance # 6 (Painting of the gymnasium) | $_____ |

1.4 For bookkeeping purposes the STIPULATED–SUM BID PRICE is

hereby broken down into the following component parts, with the sum of all parts equal to the STIPULATED–SUM BID PRICE:

Scope A: Town Hall Remodel Work $_____
Scope B: Community Center and Day-
 care Remodel Work $_____
Roofing Work $_____
Remaining Work $_____

*Id.* at 53.

Mid–States submitted a bid with a Stipulated–Sum Bid Price of $822,000.00 along with a bid bond issued by St. Paul Fire and Marine Insurance Company ("St. Paul"). On February 4, 2002, the Town Council opened the eight sealed bids that were submitted, including the bid submitted by Mid–States. Mid–States had the lowest bid, and the second lowest bid was submitted by Cooley Construction in the amount of $866,119.00. On March 1, 2002, James Butler, the Town Council President, notified Mid–States that it had been awarded the contract. The Town Council also decided to fund Alternate No. 3, which included renovation of the restrooms to comply with the ADA. After a preconstruction meeting, Mid–States sent a letter to KJG providing it with the total contract price as follows:

| Stipulated bid- | $822,000.00 |
| Alternate # 3- | $ 16,495.00 |
| Allowance # 1- | $ 50,000.00 |
| Allowance # 2- | $ 7,225.00 |
| Allowance # 3- | $ 20,000.00 |
| Allowance # 4- | $ 5,000.00 |
| Allowance # 5- | $ 9,800.00 |
| Allowance # 6- | $ 2,500.00 |
| Contract Value | $933,020.00 |

*Id.* at 78. KJG then advised Mid–States that the allowances should have been included in the Stipulated–Sum Bid Price. Mid–States offered to perform the contract for $933,020.00 or perform the contract for its bid price of $822,000 plus the cost of Alternate No. 3 and treat the allowances as change orders. On March 15, 2002, the Town Council awarded the contract to the second lowest bidder, Cooley Construction,

for an additional cost of $44,119.00 above the Stipulated–Sum Bid Price submitted by Mid–States.

The Town then filed a complaint against Mid–States and St. Paul, alleging breach of contract and forfeiture of bond. The Town filed a motion for summary judgment, which the trial court granted as follows:

The Court finds that much of the material presented by the parties would require the Court to make factual determinations and would thus not authorize the entry of summary judgment because many of those facts are in dispute. However, after full consideration of the circumstances, the Court finds that the issues before the Court may be determined within the four corners of the documents in question without the necessity of evidence to elaborate and explain.

The Court finds that the parties did, in fact, enter into a Contract and while [Mid–States and St. Paul] dispute that issue, it does not appear to this Court that there is any real dispute as to the existence of the contract. The Court also finds that any issue concerning statute of [f]rauds is not applicable to this case. The Court finds that [Mid–States] submitted a bid with a bond from St. Paul[,] which secured the bid[,] and said bid was accepted. After acceptance of the bid, [Mid–States] breached the contract, thus resulting in the forfeiture of the bond. The damages to the [Town] are ascertainable in that the next to highest bid was accepted and there is no dispute concerning that issue. The amount of damages has not been contested, but only the issue as to whether the [Town] is entitled to any such damages. The Court finds that the [Town]

is entitled to recovery herein. The Court finds that [Mid–States and St. Paul] are not entitled to summary judgment.

The Court's rationale is that the bid form, in paragraph 1.3, requests a stipulated sum bid price and [Mid–States] did bid [$822,000.00]. Section 01210 in Part 1.1 requires that "... stated allowances shall be included in the total lump sum bid price." [Mid–States and St. Paul] have contended that the allowances in Section 1.3 were separate from and not included in the [$822,000.00] bid. The Court recognized that if there is an ambiguity then the [trier] of fact would have to make a determination, however, this Court does not believe that there is such an ambiguity. The dictionary checked by this Court defined the word "sum" as "result obtained by adding together two or more things...." While [Mid–States and St. Paul] allege that the words modifying the word "sum" create an ambiguity, this Court determines that they are simply modifiers and that the word "sum" requires all amounts to be included therein. The Court finds that a reasonable interpretation of the documents indicate that there was a Contract entered into between the parties and that [Mid–States] breached the Contract and [the Town] is entitled to forfeiture of the bond and damages.

The Court finds that the damages to the [Town] are in the sum of [$44,119.00] and of that sum, because of the bond, there is joint and several liability to the extent of [$41,100.00] as to both [Mid–States and St. Paul] with the balance being attributable to [Mid–States].

*Id.* at 2–4.

■ On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.*

■ Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

### I.

The first issue is whether Mid–States is entitled to rescind its bid and bid bond because of its misinterpretation of the bid documents. According to Mid–States, the bid documents were ambiguous and there was no meeting to the minds to form a contract between Mid–States and the Town. Alternatively, Mid–States argues that equity should intervene to allow it to rescind its bid and bid bond.

## A. *Ambiguity of the Bid Documents.*

We must first determine whether the bid documents were ambiguous and whether Mid–States' interpretation of the documents was reasonable. In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. *Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 100 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* The contract is to be read as a whole when trying to ascertain the intent of the parties. *Id.* The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* The court must accept an interpretation of the contract that harmonizes its provisions as opposed to one that causes the provisions to be conflicting. *Id.* If the language of the instrument is unambiguous, we will determine the intent of the parties from the four corners of that instrument. *Id.* at 99–100. However, a contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Id.* at 100.

The Bid Notice provided that "[b]ids shall be on a stipulated sum basis; segregated bids will not be accepted." Appellant's Appendix at 174. The bid documents for the project included "Addendum # 1: Document 00410—Bid Form," which contained the following form:

1.3 The undersigned will complete the Work in accordance with the Contract Documents for the following prices:

STIPULATED–SUM
BID PRICE _____ ($ _____ )
 (Use words) (Figures)

**ALTERNATES**
Add Alternate No. 1 (Demolition and renovation of the locker room area in the Community Center in scope of work B)
 Add ($ _____)

Add Alternate No. 2 (Add 5–foot sidewalk in scope of work B)
 Add ($ _____)

Add Alternate No. 3 (Demolition and renovation of the restroom to meet ADA requirements in the Goodland Town hall in scope of work A)
 Add ($ _____)

Add Alternate No. 4 (Add radiant heaters to three daycare classrooms as shown on plans and any wiring required for installation in scope of work B)
 Add ($ _____)

**ALLOWANCES**
Allowance # 1
 (Contingency allowance) $_____
Allowance # 2
 (Carpet allowance) $_____
Allowance # 3
 (Clean and abate mold) $_____
Allowance # 4
 (Utility company charges) $_____
Allowance # 5
 (Hardware allowance) $_____
Allowance # 6
 (Painting of the gymnasium) $_____

1.4 For bookkeeping purposes the STIPULATED–SUM BID PRICE is hereby broken down into the following component parts, with the sum of all parts equal to the STIPULATED–SUM BID PRICE:

Scope A: Town Hall Remodel Work $_____
Scope B: Community Center and Daycare Remodel Work $_____
Roofing Work $_____
Remaining Work $_____

Appellant's Appendix at 53. "Addendum # 1: Section 01210—Allowances" provided the following:

1.1 REQUIREMENTS INCLUDED

A. The Specifications contain cash allowances for particular items, methods of construction, quantities of materials, labor for certain items and these stated allowances shall be included in the total lump sum bid price.

1. Should the final amounts as determined from the actual costs vary from these stated allowances, the Contract price will be adjusted by Change Order as stated in the Conditions of the Contract.

2. Under no circumstances shall Work, exceeding the stated allowance amounts, proceed without a properly executed Change Order.

B. A "Schedule of Allowances" showing amounts included in Contract Sum, is included at the end of this Section.

\* \* \* \* \*

### 3.1 SCHEDULE OF ALLOWANCES

A. Allowance No. 1: Allow a lump sum contingency allowance of $50,000.00 for unforeseen conditions in the Work.

B. Allowance No. 2: Allow a lump sum provided by a unit price of $12.50 per square yard times the total area of carpet indicated on Drawings for purchase and installation for the carpet as specified in Section 09682.

C. Allowance No. 3: Allow a lump sum allowance of $20,000.00 to clean and abate mold and mildew. This allowance will also cover general cleaning in the non-used portion of the building.

D. Allowance No. 4: Allow a lump sum allowance of $5,000.00 for costs associated with utility company charges for hook-up/reconnection of water, sewer, gas and electric.

E. Allowance No. 5: Indicate a lump sum amount for the door hardware as specified on the plans and in the specification book section 07710.

F. Allowance No. 6: Provide a lump sum allowance of $2,500.00 for painting in the gymnasium. The gymnasium will only be painted

[where] needed on the walls, joists and exposed ductwork.

*Id.* at 60–61.

Mid–States argues that the bid documents were ambiguous because Section 1.3 of the Bid Form provides that "[t]he undersigned will complete the Work in accordance with the Contract Documents for the following prices" and that the term "prices" includes the Stipulated–Sum Bid Price, the alternates, and the allowances as separate items. *Id.* at 53. Further, Mid–States argues that although Section 1.1 of Addendum # 1: Section 01210—Allowances provides that the "allowances shall be included in the total lump sum bid price," the Bid Form included no category for "total lump sum bid price." *Id.* at 60.

We disagree and conclude that the bid documents were unambiguous and required Mid–States to include the allowances in the Stipulated–Sum Bid Price. The bid documents referred to allowances that were stipulated prices for certain work, such as carpet, door hardware, and cleaning mold, to be included as part of the total work required for the renovation of the daycare, town hall, and community center. The bid documents specifically provided that the "allowances *shall be included* in the total lump sum bid price" and "[a] 'Schedule of Allowances' showing *amounts included in Contract Sum,* is included at the end of this Section." *Id.* at 60. (emphasis added). Thus, the allowances were clearly to be included in the "total lump sum bid price" or the "Contract Sum."

While the Bid Form does not contain either of these terms, it does require the bidder to provide a "Stipulated–Sum Bid Price." Mid–States argues that the Stipulated–Sum Bid Price does not include the allowances. However, a review of the bid documents as a whole convinces us otherwise. The Bid Notice provided that

"[b]ids shall be on a stipulated sum basis; segregated bids will not be accepted." *Id.* at 174. The Bid Form lists the Stipulated–Sum Bid Price followed by four optional alternate projects preceded by the word "Add," which were then followed by a list of allowances not preceded by the word "Add." Although the Stipulated–Sum Bid Price is not labeled as "total lump sum bid price" or "Contract Sum," any interpretation that these terms are not interchangeable would render the bid documents' explicit directive to include the allowances within the "total lump sum bid price" or "Contract Sum" meaningless.

We also note that the Bid Form requires the Stipulated–Sum Bid Price to be broken down into several components for bookkeeping purposes, including the Town Hall Remodel Work, the Community Center and Daycare Remodel Work, the Roofing Work, and the Remaining Work. Because the work and materials included within the allowances, i.e., carpet, door hardware, and cleaning mold, are an integral part of performing the work on the daycare, community center, and town hall, it would result in an inaccurate calculation if the Stipulated–Sum Bid Price was broken down into the components but the allowances were not included within that Stipulated–Sum Bid Price.

We conclude that the bid documents were unambiguous and reasonable persons would not have differed as to whether the allowances were included in the Stipulated–Sum Bid Price. Mid–States misinterpreted the unambiguous language of the bid document when it failed to include the cost of the allowances in its Stipulated–Sum Bid Price.

B. *Meeting of the Minds—Objective Manifestation of Intent.*

In Indiana, "the written proposal of a public entity for work to be done, the written bid of a party to do the proposed work, and the written acceptance of such bid by the proper authorities, constitutes a contract to do the proposed work, even though a formal contract to do the work has not been executed." *Jackson v. Union–North United Sch. Corp.*, 582 N.E.2d 854, 857 (Ind.Ct.App.1991), *trans. denied.* Here, Mid–States argues that, despite the Town Council's invitation to bid, Mid–States' submission of a bid to perform the work, and the Town Council's acceptance of Mid–States' bid, there was no contract formed because there was no meeting of the minds between Mid–States and the Town Council regarding the total contract price.

In *Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450, 455–456 (Ind.1982), our supreme court drew upon American Jurisprudence to describe what was required to show agreement to the terms of a contract.

> There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. However, ordinarily no more is meant by this than that an expression or manifestation of mutual assent, as an objective thing, is necessary.... For a contract to be binding, the parties must have a distinct and common intention which is to be applied, however, in determining whether the parties possessed the necessary intention to contract. This means that the manifestation of a party's intention, rather than the actual or real intention, is ordinarily controlling....
>
> \* \* \* \* \*
>
> The entry of the parties into a contractual relationship must be manifested by some intelligible conduct, act, or design. Assent in the sense of the law is a matter of overt acts and expressions....

*Id.* (quoting 17Am.Jur.2d Contracts §§ 18–19 (1964)) (internal quotations omitted).

Mid–States argues that it did not assent because the bid documents were ambiguous and it interpreted the bid documents to exclude the allowances from the Stipulated–Sum Bid Price. In support of its argument, Mid–States relies upon *Bd. of Sch. Comm'rs of the City of Indianapolis v. Bender,* 36 Ind.App. 164, 72 N.E. 154 (1904). In *Bender,* the school board advertised for bids for an addition to a school building. *Id.* at 165, 72 N.E. at 155. Bender obtained the specifications for the work and was informed that his bid had to be submitted by 4:00 p.m. on February 25, 1902. *Id.* at 166, 72 N.E. at 155. Two subcontractors did not provide Bender with their estimates until 3:30 p.m., and in hastily finalizing his bid, Bender miscalculated. *Id.* at 167, 72 N.E. at 155. Bender bid $11,337 to perform the work, but he would have bid $15,750 if he had made an accurate calculation. *Id.* at 168, 72 N.E. at 156. After submitting his bid, Bender learned that he had been misinformed and bids were not required to be submitted until 8:00 p.m. *Id.* at 168, 72 N.E. at 155. Bender's bid was the lowest, and the school board accepted the bid. *Id.* at 168–169, 72 N.E. at 155. The next day, Bender realized his miscalculation and informed the school board that he could not enter into a contract for his bid amount. *Id.* at 169, 72 N.E. at 155.

On appeal, this court held:

There is one thing clear, and that is that in his own mind and judgment [Bender] did not agree to enter into a contract to furnish the material and do the work according to the plans and specifications furnished him by the architect, for the amount designated by his bid. According to the facts pleaded, [Bender] was not negligent and careless in submitting his bid as he did.

*Id.* at 172, 72 N.E. at 157. This court noted that Bender's error appeared to be an excusable mistake and added that:

"But where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistakes or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into the error or in not sooner making redress, and no intervening rights have accrued, and the parties may still be placed in statu (sic) quo, equity will interfere, in its discretion, in order to prevent intolerable injustice." In line with the above it is declared to be the rule "that no contract of sale is reciprocally obligatory upon parties thereto, if it be founded upon an injurious mistake of a material fact forming the basis of the contract."

*Id.* at 173, 72 N.E. at 157 (internal citations omitted). Consequently, this court held that it was "evident that the minds of the parties never met" and that the school board "acquired no rights under [Bender's] erroneous or mistaken bid." *Id.* at 173–174, 72 N.E. 154, 34 Ind.App. 420, 72 N.E. 158.

We find *Bender* distinguishable from this case. Unlike *Bender,* Mid–States does not argue that it miscalculated in preparing its bid. Thus, the reasoning behind *Bender* is inapplicable. Rather, Mid–States argues that the bid documents were ambiguous and it reasonably interpreted the bid documents to mean that the allowances were not included in the Stipulated–Sum Bid Price. However, we have concluded that the documents were not ambiguous and that Mid–States' interpretation was not reasonable. As noted above, the manifestation of Mid–States' intentions, rather than its actual or real intentions, is controlling. *Carr,* 441

N.E.2d at 455. We conclude that Mid–States' bid on the project, coupled with the unambiguous language of the bid documents, constitutes a manifestation of assent and a contract was formed between Mid–States and the Town. *See, e.g., id.* at 456 (holding that the plaintiff's act of bringing the film for processing, coupled with the awareness and understanding of the effect of the limitation of liability clause in the contracts, constituted a manifestation of assent to those terms and the plaintiff was bound by the terms of the limitation of liability clause).

### C. *Equity.*

 Mid–States also argues that equity should intervene to allow a rescission of its bid and a return of the bid bond. Equitable relief may be granted if a contract is based upon a mutual mistake of material fact. *Hancock v. Ky. Cent. Life Ins. Co.,* 527 N.E.2d 720, 723 (Ind.Ct.App. 1988), *trans. denied.* Additionally, a contract generally may not be avoided for unilateral mistake unless the mistake was induced by the misrepresentation of the opposite party. *Id.* at 724. Thus, equity has jurisdiction in only two well-defined situations: (1) where there is a mutual mistake; or (2) where there has been a mistake by one party, accompanied by fraud or inequitable conduct by the remaining party. *Plumlee v. Monroe Guar. Ins. Co.,* 655 N.E.2d 350, 356 (Ind.Ct.App. 1995) (discussing reformation of a contract), *reh'g denied, trans. denied.* However, equitable relief is not available if the mistake is a mistake of law. *Estate of Spry v. Greg & Ken, Inc.,* 749 N.E.2d 1269, 1275 (Ind.Ct.App.2001), *reh'g denied.* Equity should not intervene "where the complaining party failed to read the instru-

ment, or, if he read it, failed to give heed to its plain terms." *Id.* (quoting *Gierhart v. Consol. Rail Corp.-Conrail,* 656 N.E.2d 285, 287 (Ind.Ct.App.1995)).

Mid–States does not argue, and the designated evidence does not suggest, that mutual mistake is applicable. Further, Mid–States does not allege fraud or inequitable conduct on the part of the Town. Moreover, as noted above, equity should not intervene where the complaining party failed to "give heed" to the plain terms of the document. *Estate of Spry,* 749 N.E.2d at 1275. We have determined that the bid documents were unambiguous and required the allowances to be included in the Stipulated–Sum Bid Price. Despite the unambiguous nature of the bid documents, Mid–States failed to "give heed" to the plain terms requiring the allowances to be included in the Stipulated–Sum Bid Price. Thus, equity may not intervene to rescind Mid–States' bid and bid bond.

### D. *Other Jurisdictions.*

 Our holding is consistent with the treatment of bid mistakes in most other jurisdictions. The general rule is that "[b]id errors that result from clear cut clerical or arithmetic errors [1] or a misreading of the specifications are the kind of excusable mistake that allows relief." *Liebherr Crane Corp. v. United States,* 810 F.2d 1153, 1157 (Fed.Cir.1987) (footnote added). "Mistakes of judgment, on the other hand, do not qualify for such relief." *Id.* Generally, the misinterpretation of an unambiguous contract has been held to be a mistake of judgment. *See, e.g., C.W. Over & Sons, Inc. v. United States,* 54 Fed. Cl. 514, 523–525 (Fed.Cl.2002) (hold-

---

**1.** *See also* Harrison, David B., *Right of Bidder for State or Municipal Contract to Rescind Bid on Ground that Bid was Based upon His Own Mistake or that of His Employee,* 2 A.L.R.4th

991 (discussing the right to rescind a bid for a mistake of fact, such as a mathematical error).

ing that the contractor was not entitled to reformation of its contract because it made a mistake of judgment in bidding when it misinterpreted an unambiguous sales tax clause); *Sanders–Midwest, Inc. v. United States*, 15 Cl.Ct. 345 (Cl.Ct.1988) (holding that the contractor was not entitled to reformation of its contract where the contractor argued that it was misled by the language in the contract and the invitation to bid but the language was unambiguous and, thus, the contractor made a mistake of judgment); *State of Missouri v. Hensel Phelps Constr. Co.*, 634 S.W.2d 168 (Mo. 1982) (holding that a contractor could not rescind its bid where the contract language that it misinterpreted was unambiguous).

In summary, we conclude that Mid–States entered into a contract with the Town and breached its contract by refusing to perform the work in accordance with its bid price. Further, Mid–States is not entitled to rescind its bid or bid bond. St. Paul's liability pursuant to the bid bond is contingent upon Mid–States' liability. *See, e.g., Ind. Univ. v. Ind. Bonding & Sur. Co.*, 416 N.E.2d 1275, 1279 n. 1 (Ind. Ct.App.1981). Because we conclude that the Mid–States breached its contract, we also conclude that St. Paul is liable pursuant to the bid bond. Consequently, the trial court was correct in granting the Town's motion for summary judgment.

## II.

▬▬▬ The next issue is whether the contract is void because the Town Council failed to meet certain procedural requirements in awarding the contract. Mid–States argues that the trial court erred by granting summary judgment because gen-

uine issues of material fact exist regarding whether Butler, the Town Council president, had authority to award the project to Mid–States and whether the Town Council adopted the plans and specifications.[2] According to Mid–States, these requirements were not met and, thus, any contract between Mid–States and the Town is void and unenforceable.

### A. Authority of Town Council President

▬▬▬ Mid–States argues that the contract is void because Butler, the Town Council President, did not have the authority to award the contract to Mid–States. Generally, "[b]oards and commissions speak or act officially only through the minutes and records made at duly organized meetings." *Brademas v. St. Joseph County Comm'rs*, 621 N.E.2d 1133, 1137 (Ind.Ct.App.1993). Mid–States contends that the Town Council's minutes do not reflect a delegation of authority to Butler to award the contract.

In support of its argument, Mid–States relies upon *McCrary Eng'g Corp. v. Town of Upland*, 472 N.E.2d 1305, 1307 (Ind.Ct. App.1985). In *McCrary*, the town board president entered into an employment contract with an engineering firm. *Id.* at 1305–1306. However, the president did not have authority from the town board to enter into the contract, and the town board later sought to terminate the contract. *Id.* We noted that "[t]he authority of a town board president is derived from constitutions, charters, statutes or ordinances" and "[a] municipality may deny the validity of a contract entered into by its officials if [the

---

**2.** Mid–States also argues that genuine issues of material fact exist regarding whether KJG, the architect, approved the plans and specifications pursuant to Ind.Code § 36–1–12–7 (1998). However, Mid–States did not make this argument to the trial court. An appellant who presents an issue for the first time on appeal waives the issue for purposes of appellate review. *Breneman v. Slusher*, 768 N.E.2d 451, 463 (Ind.Ct.App.2002), *reh'g denied, trans. denied.*

officials] lacked the requisite authority." *Id.* at 1307–1308. We held that the president was not authorized to enter into the employment contract and, thus, the contract was unenforceable against the town. *Id.* at 1308.

We conclude that *McCrary* is distinguishable from this matter for two reasons. First, *McCrary* stands for the proposition that a town can deny the validity of a contract due to lack of authority to enter into the contract. Mid–States cites no authority for the proposition that a contractor can avoid its responsibilities for an accepted bid by claiming that the town council's president lacked the authority to enter into the contract where the town does not deny that the president had the authority to enter into the contract. *See, e.g., City of Crawfordsville v. Price,* 778 N.E.2d 459, 464 (Ind.Ct.App.2002) (holding that a contractor who was attempting to circumvent a city's negligence claim was estopped from arguing that its contract with the city was void).

Second, in *McCrary,* it was clear that the president did not have authority to enter into the contract. Here, even without considering the letter from Butler to Mid–States awarding the contract, it is clear that the Town Council itself awarded the bid to Mid–States. On February 4, 2002, the Town Council opened the eight sealed bids that were submitted, including the bid submitted by Mid–States. The minutes of the February 18, 2002 Town Council meeting provide that:

> On the Community Center, Chris Chapman will be taking the necessary bid paperwork to the State for approval of the contractor, then we can award the project. The project definitely looks like a go as there were 2 bids that fell within the project's available funds.

The Council could not say much about anything until the approval from the State.

Appellant's Appendix at 158. On March 1, 2002, Butler notified Mid–States by letter that it had been awarded the contract. Although minutes from the March 2002 Town Council meetings were unavailable,[3] Mid–States designated evidence indicating that the Town Council had held a meeting on March 8, 2002, to award the contract for the project to Mid–States and that representatives from Mid–States attended this meeting. Additionally, the Town designated evidence from Butler's deposition that the Town Council voted to give Butler the authority to sign and award the contract for the project.

We conclude that, even if the minutes do not reflect the delegation of authority to Butler to award the contract to Mid–States, the designated evidence demonstrates that the Town Council itself awarded the contract to Mid–States. Thus, Mid–States may not avoid liability under the contract on this basis. There were no genuine issues of material fact, and the Town was entitled to judgment as a matter of law on this issue.

**B. *Town Council's Approval of the Plans and Specifications***

Mid–States argues that the Town Council did not comply with Ind.Code § 5–16–1–1.2(a), which provides that:

> When a public building or other public work or improvement of any character is to be constructed, erected, altered, or repaired at the expense of the state or a commission created by law (excepting the Indiana department of transportation), and when the estimated costs of the work or improvement is greater

---

**3.** The minutes were unavailable due to a malfunction of the recording equipment and errors made by the clerks recording the minutes.

than twenty-five thousand dollars ($25,-000) the board, commission, trustee, officer, or agent acting on behalf of the state or commission created by law (excepting the Indiana department of transportation), shall adopt plans and specifications and shall award a contract for the public work or improvement to the lowest and best bidder who submits a bid for the performance of the work. According to Mid–States, the minutes of the Town Council meetings do not reveal that the Town Council adopted the plans and specifications.

A review of the designated evidence leads us to conclude that the minutes are sufficient to demonstrate that the Town Council adopted the plans and specifications. The minutes of the November 19, 2001 meeting reflect that the plans and specifications were "present[ed]" to the Town Council and a "request for bids legal ad" had been prepared "to fax to the paper if the plans are approved." Appellant's Appendix at 151. The minutes of the December 17, 2001 meeting indicate that an advertisement for bids had been placed and the bids would be read on January 3, 2002. The minutes of the January 8, 2002 meeting reflect that the meeting was held "to decide on what would be cut from the plans and specs" and various options were discussed. The minutes further provide that "legal ad for bids will hit Jan. 16th, and the new bids will be read at a meeting on Feb. 4th at 7:00 pm." *Id.* at 155. The minutes of the January 21, 2002 meeting indicate that the "plans and specs had been scaled back" and the project was being rebid. *Id.* at 156.

Although the minutes do not use the word "adopted," the Town Council's actions indicate that it did adopt the plans and specifications. We conclude that the minutes are sufficient to reflect substantial compliance with the provisions of Ind.Code § 5–16–1–1.2(a). Consequently, Mid–States may not avoid liability under the contract on this basis. There were no genuine issues of material fact, and the Town was entitled to judgment as a matter of law on this issue. *See, e.g., Feigel Const. Corp. v. City of Evansville,* 128 Ind.App. 698, 706, 150 N.E.2d 263, 267 (1958) (holding that "[t]here was compliance with the essential purpose of the statute which was to insure competitive bidding and there was sufficient substantial compliance with the provisions of the statute as to notice to bidders to such extent that it would be improper for this court to hold such contracts void").

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the Town.

Affirmed.

DARDEN, J. and ROBB, J. concur.