**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JOSHUA E. LEICHT**
Kokomo, Indiana

ATTORNEY FOR APPELLEE:

**BRIAN L. OAKS**
Kokomo, Indiana



FILED

Jan 11 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ARNOLD W. COOK, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1104-CC-339 |
| | ) | |
| CONSOLIDATED ROOFING, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable George A. Hopkins, Judge
Cause No. 34D04-0711-CC-1269

**January 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Arnold W. Cook filed a complaint against Consolidated Roofing, Inc. (Consolidated) for injunctive and declaratory relief and damages based up agreements involving the sale of Cook's roofing business to Consolidated and Cook's subsequent employment by Consolidated. Consolidated filed counterclaims against Cook. The trial court entered judgment substantially in favor of Consolidated. On appeal, Cook presents the following restated issues for review:

1. Did Consolidated's purchase of the business include the trade or business name(s)?

2. Was Cook's employment properly terminated by Consolidated for cause?

3. If terminated for cause, is Cook still entitled to retirement benefits?

We affirm.

Cook had been in the roofing business for many years in the Howard County area and was the president and majority shareholder (Cook owned 80% of the corporation) in a corporation named A C Roofing, Inc.[1] He operated the corporation under various trade names such as Arnie Cook's Roofing, as well as A C Roofing and Weatherbloc.

In 2003, Cook approached Janis and Kenneth Devlin about selling his business to the couple, who were already involved in a roofing supply company. The Devlin's were not interested at the time, but they began to consider the proposal in early 2004. In May 2004, Janis began working for A C Roofing. With her financial background, Janis worked to get the struggling business's books in order and to determine the corporation's value. The Devlins eventually decided to purchase the company, and they entered into lengthy

---

[1]   His daughter owned the remaining 20% of the corporation.

negotiations with Cook.[2]  The negotiations resulted in the execution of two contracts on October 22, 2004, a real and personal asset purchase agreement (purchase agreement) and an employment contract.

The purchase agreement provided for the asset sale of A C Roofing to Consolidated (of which Janis was president and Kevin was vice president) for the purchase price of $410,000.[3] Most relevant for our purposes, Paragraph 1 of the purchase agreement provided as follows:

> Buyer shall purchase from Seller, and Seller shall sell to Buyer all of Seller's assets described in the attached schedule, (Exhibit A) together with Seller's roofing business known as A C Roofing, Inc., also known as Arnie Cook Roofing and Weatherbloc, 1226 North Main Street, Kokomo, Indiana as a going concern including the current telephone number of (765) 452-9355, the Accounts Receivables, signed contracts and Inventory.

*Plaintiff's Exhibit 1* at 1.  The purchase agreement also contained a five-year non-competition provision covering a one-hundred-mile radius of Kokomo.

Pursuant to the employment contract, Consolidated agreed to employ Cook as a manager and consultant on roofing issues for the term of five years, commencing on November 1, 2004 and terminating on October 31, 2009.  This short, two-page agreement further provided in part:

---

[2]  In late September, during the negotiations, A C Roofing was faced with a financial crisis when the bank froze its accounts for being in default on four promissory notes totaling nearly $300,000, which were personally guaranteed by Cook and also secured by the assets of the corporation.  The Devlins assisted in resolving the issue and reached an agreement with the bank in early October.  This agreement included, among other things, an influx of funds to the bank and the Devlins agreeing to purchase the corporation by October 29, 2004.

[3]  Much of the purchase price went to paying off or assuming debt.  The purchase price also included installment payments totaling $110,000 to Syawn Hopkins, Cook's daughter (the minority shareholder of A C Roofing).

**Time**

2.    ….The Employee shall devote his entire time and attention to the business of the Employer for the term of this contract. The Employee shall not directly or indirectly render any services of a business or commercial nature to any other person or organization without the prior written consent of the Employer.

**Compensation**

4.    As compensation for services rendered under this contract, the Employee shall be entitled to receive from the Employer a salary of $70,000 per year, payable in equal weekly installments.

* * * *

**Termination**

6.    Neither party shall terminate this contract without cause.

**Effect of Termination on Compensation**

7.    If this contract is terminated prior to completion of the term of employment specified in this contract, the Employee shall be entitled to compensation earned prior to the date of termination as provided for in this contract computed pro rata up to and including the date. The Employee shall be entitled to no further compensation as of the date of termination.

**Retirement**

8.    The parties agree that Employer shall provide a retirement plan to employee as shall be agreed upon by the parties and at a minimum shall include health insurance and reasonable compensation.

*Defendant's Exhibit I* at 1-2.

Cook worked for Consolidated for over a year as the primary spokesman and marketing person for A C Roofing, also doing business as Arnie Cook Exteriors. Although the Devlins were pleased with his performance, they eventually began hearing rumors from others. For example, people told them that Cook was talking about "taking his company

back". *Transcript* at 212. This was followed by suspicious behavior, such as indications that Cook had cut three hidden holes in the drywall in an attempt to spy into Janis Devlins's office.

On March 2, 2006, Consolidated suspended Cook with pay. Consolidated's attorney notified Cook that during the indefinite suspension Cook was not to conduct any business on behalf of the company and was not authorized to purchase any material or attend any trade group meetings. He was also directed to stay away from the business, as his pay check would be mailed to his home.

Beginning in May 2006 and continuing through the spring of 2007, Cook's legal counsel sent letters to Consolidated demanding that it stop using the trade name Arnie Cook Roofing or any derivation thereof. Cook also sought to establish the provisions of his retirement plan.

After about a year of paid suspension, Cook began investigating establishing a roofing business with his son in at least one other area of Indiana. As part of his activities while suspended, on March 27, 2007, he purchased a commercial general liability policy in the name of Cook & Cook, Inc. During his suspension, he also contacted two of Consolidated's roofing suppliers and obtained quotations for roofing supplies from at least one of them. Further, after having business cards printed, he traveled to the New Albany area and talked with contractors and building owners to try to "drum up some business". *Transcript* at 121. According to Cook, nothing came of these business attempts and he did no roofing jobs.

Though Janis Devlin had heard talk that Cook was doing roofing jobs while on paid suspension, she did not act upon these rumors until evidence of the commercial general

5

liability policy surfaced. At that point, Consolidated's legal counsel sent a letter to Cook, dated July 31, 2007, terminating his employment for breach of the employment agreement. The letter further warned that any continued roofing activities would violate the non-compete provision in the purchase agreement and should be ceased.

On August 1, 2007, Cook filed a complaint against Consolidated,[4] which was amended shortly thereafter. The amended complaint sought declaratory and injunctive relief, as well as damages, based upon Cook's allegation that the trade name still belonged to him and had not been sold with the business. Cook further sought an order for retirement benefits, health insurance, and profit sharing, as well as a declaration that the non-compete provision in the purchase agreement was null and void. Finally, Cook alleged that he was fraudulently induced to enter into the purchase and employment agreements. Consolidated filed counterclaims against Cook, seeking enforcement of the non-compete provision and damages for breach of the employment agreement.

The trial court held an emergency hearing on September 18, 2007 to address the validity of the non-competition provision contained in the purchase agreement. On October 9, 2007, the court struck the provision from the agreement, finding that it was overly broad and unenforceable.[5] Therefore, Cook was permitted by the court to start his own roofing business in Kokomo, which he did so utilizing the business name Arnie Cook's Roofing.

After much delay and a change of judge, a bench trial was held on January 25, 2011.

---

[4] Cook also named the Devlins, personally, as defendants. The trial court dismissed the Devlins from the case pursuant to Trial Rule 12(B)(6), as they were not parties to the agreements in their individual capacities.

6

The trial court took the matter under advisement. On March 14, 2011, the trial court entered its ruling whereby Cook received nothing by way of his complaint. He was permitted, however, to continue to operate a local roofing business but could not use A C Roofing, Arnie Cook Exteriors, Arnie, Cook, or any variation thereof as part of his business name. Cook now appeals

1.

Cook initially contends that the trial court erred in holding that Consolidated had purchased the trade or business names for A C Roofing when it purchased the assets of the corporation. He contends the parties specifically listed the tangible assets and major intangible assets in the purchase agreement. Since the trade name was not expressly listed as an asset being sold, Cook argues that is a clear indication that it was not intended to be included in the sale.

The construction of the terms of a written contract is a pure question of law, which we review de novo. *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238 (Ind. Ct. App. 2010). When interpreting a contract, we give the language of the contract its plain and ordinary meaning and attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id*. We consider extrinsic evidence only when a contract is ambiguous, that is "susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Mid-State Gen. & Mech. Contracting Corp. v. Goodland*, 811 N.E.2d 425, 431

---

[5] This order is not included in the record before us. Consolidated sought reconsideration of the ruling at trial, which the trial court denied. The validity and enforceability of the non-competition provision is not before us

(Ind. Ct. App. 2004).

As set forth above, the relevant provision of the purchase agreement provides:

Buyer shall purchase from Seller, and Seller shall sell to Buyer all of Seller's assets described in the attached schedule, (Exhibit A)[6] *together with Seller's roofing business known as A C Roofing, Inc., also known as Arnie Cook Roofing and Weatherbloc*, 1226 North Main Street, Kokomo, Indiana as a going concern including the current telephone number of (765) 452-9355, the Accounts Receivables, signed contracts and Inventory.

*Plaintiff's Exhibit 1* at 1 (emphasis supplied).   There is nothing ambiguous about this contractual language.   In addition to the tangible assets of the business, the contract specifically indicates that the business, "A C Roofing", was being sold "as a going concern".  Further, the contract lists the business's other name, Arnie Cook Roofing and Weatherbloc. While the contract could have expressly stated that all trade names were being transferred in the sale (along with the telephone number, accounts receivables, signed contracts, and inventory), we conclude that the failure to do this does not make the contractual language in question ambiguous.

Moreover, even if we were to find the contractual language ambiguous, the parties' actions after execution of the purchase agreement indicate that the trade names were intended

---

on appeal, as Consolidated has not cross-appealed.

[6]   All tangible assets are listed in this exhibit.

to be transferred in the sale. To be sure, Cook was not only aware of Consolidated's use of the name Arnie Cook Exteriors, he actively marketed on their behalf for more than a year after the sale.

In sum, nothing in the contractual language or actions of the parties at or near the time the purchase agreement was executed indicate an intent that any trade or business names associated with the business were not being transferred to Consolidated. The trial court did not err in determining that the trade or business names are now owed by Consolidated.

2.

Cook also contends that he was not terminated for cause, as required by the employment contract. Although he investigated establishing a new roofing business, obtained a quote from a materials supplier, and purchased a commercial general liability insurance policy while suspended, Cook argues that he did not violate the employment agreement because he did not actually do any roofing jobs. Referencing paragraph two of the employment agreement, Cook asserts that he did not "render any services of a business or commercial nature to any other person or organization". *Defendant's Exhibit I* at 1.

Once again, we engage in de novo review, as Cook does not challenge the trial court's findings of fact. Rather, his argument centers on interpretation of the employment agreement, specifically application of the term "for cause" termination.

Cook's characterization of the term "for cause" is much too narrow. When Cook embarked on starting up a new roofing business, he was still an employee of Consolidated, albeit on paid suspension, with more than two years left in his employment agreement. While there is no evidence that he had actually obtained or completed roofing jobs outside of

9

his employment with Consolidated, all indications were that he made significant efforts in this regard and was preparing to directly or indirectly render services of a business or commercial nature to others without Consolidated's consent. Moreover, Cook had been expressly instructed not to purchase any material during his suspension, yet he contacted suppliers of Consolidated and obtained at least one quote. Consolidated did not have to wait until Cook breached paragraph two of the employment agreement by doing a roofing job. Rather, his actions in the months leading up to his termination provided Consolidated with ample cause for his termination.

3.

Finally, Cook challenges the trial court's determination that he was not entitled to retirement benefits following his termination for cause. In sum, Cook asserts that his right to the retirement benefits (which had yet to be precisely defined)[7] vested at the beginning of the employment period regardless of whether he was terminated for cause.

There is simply no language in the employment agreement to support Cook's self-serving interpretation of the contract. Had the parties intended for Cook's retirement benefits to vest on day one of his employment, the contract could have been so written. To be sure, the parties expressly set forth in the contract what effect early termination for cause would have upon Cook's regular compensation (i.e., his $70,000 yearly salary). In that respect, he was "entitled to compensation *earned prior to the date of termination* as provided for in this contract computed pro rata up to and including that date." *Defendant's Exhibit I* at 2

(emphasis supplied).

In the instant case, Cook actively worked for Consolidated for a little over a year and then was suspended with pay following suspicious behavior. About half-way through the five-year contract, Cook was terminated for cause as set forth above. Having not completed his five-year commitment to Consolidated, Cook was not entitled to retirement benefits.

Moreover, to the extent Cook attempts to apply paragraph seven's pro-rata-share provision, we observe that there is no indication he had "earned" any retirement benefits prior to his early termination for cause. Therefore, he was not entitled under the contract to further compensation, including retirement benefits, following his termination. The trial court did not err in refusing to award retirement benefits to Cook.

Judgment affirmed.

RILEY, J., and MATHIAS, J., concur.

---

[7] With respect to retirement, the employment agreement vaguely indicated that Consolidated "shall provide a retirement plan to [Cook] as shall be agreed upon by the parties and at a minimum shall include health insurance and reasonable compensation." *Defendant's Exhibit I* at 2.