**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**SHAUN T. OLSEN**
Law Office of Weiss & Schmidgall, P.C.
Merrillville, Indiana

ATTORNEY FOR APPELLEE:

**JOHN L. KELLY, JR.**
Merrillville, Indiana



FILED

Nov 01 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID J. BOGOLIA and NIKKI SCHAFER,   )
                                       )
    Appellants-Defendants,           )
                                       )
        vs.                      )    No. 64A04-1201-CC-42
                                       )
JOHN DANIELSON, M.D.,                  )
                                       )
    Appellee-Plaintiff.              )
                                       )

INTERLOCUTORY APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-1103-CC-1649

**November 1, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

David J. Bogolia and Nikki Schafer appeal the trial court's denial of their motion for partial summary judgment and their motion to strike Dr. John Danielson, MD's response to that motion. They contend that Dr. Danielson's response was untimely because it was not filed within thirty days from the time they served their motion. They also contend that there is no genuine issue of material fact that both Dr. Danielson's claim is barred because he is required to seek compensation solely through Medicare and that Dr. Danielson's claim against Schafer fails as a matter of law because she was a disclosed agent of Bogolia. Finding that Dr. Danielson's response to the motion for partial summary judgment was not timely filed but nonetheless that there are genuine issues of material fact as to both issues, we affirm.

**Facts and Procedural History**

On May 19, 2007, Bogolia suffered a serious hand injury that required medical attention. Appellant's App. p. 55. Bogolia went to Porter Memorial Hospital in Valparaiso and was treated by Dr. Danielson. Before being seen by Dr. Danielson, Bogolia was required to fill out registration paperwork and sign a Financial Policy. Bogolia was unable to sign due to his hand injury, so his daughter, Nikki Schafer, signed the Financial Agreement and indicated next to her signature that she was Bogolia's daughter. However, Schafer dated the Financial Policy May 22, 2007. *Id.* at 53. At the time, Schafer also had power-of-attorney and was a healthcare surrogate for Bogolia.

Dr. Danielson was a participating physician in the Medicare program, and the Financial Policy stated that Dr. Danielson would file with Medicare if the patient had met

2

his deductible for the year. *Id.* at 84. When Dr. Danielson treated Bogolia, Bogolia had Medicare insurance and had met his deductible for the year. Dr. Danielson performed surgery on Bogolia's hand, which included an initial consultation and required two follow-up office visits. The total cost of Bogolia's medical bills was $9690.00. *Id.* at 12.

Neither Bogolia nor Schafer received a bill from Dr. Danielson after he treated Bogolia's injuries. However, on January 18, 2008, Dr. Danielson's office sent a bill in the amount of $9690.00 to Paul Rossi, Bogolia's attorney, which was forwarded to Bogolia. *Id.* at 56. Bogolia and Schafer called the Social Security Administration after receiving the bill, and they were informed that Dr. Danielson was under contract to accept assignment on all services provided to Medicare patients, but that he had not submitted the bill at issue yet. Rossi then sent the bill to the Social Security Administration on behalf of Bogolia, and the Social Security Administration made a check payable to Dr. Danielson for the physician services rendered. However, Dr. Danielson refused to accept the check, as Medicare reimbursements are less than the full amount of services.

Dr. Danielson filed a complaint against Bogolia and Schafer, arguing that they were jointly and severally liable for the payments owed to him for the medical services he rendered to Bogolia. Bogolia and Schafer answered the complaint and filed a counter-claim and a motion to dismiss and/or for judgment on the pleadings, which was denied. On September 9, 2011, Bogolia and Schafer mailed their motion for partial summary judgment, rendering it served. It was deemed filed with the clerk's office on September 13, 2011. Dr. Danielson filed his response on October 13, 2011, and Bogolia and Schafer

filed a motion to strike his response as untimely.  A hearing was held, during which both parties referred to this action as a personal injury case.  *See, e.g.*, Tr. p. 11, 18.  The trial court denied both the motion to strike and the motion for partial summary judgment.

Bogolia and Schafer asked the trial court to certify its orders on the motion to strike and the motion for partial summary judgment for interlocutory appeal, which the trial court granted.  This Court accepted jurisdiction over the interlocutory appeal on March 2, 2012.

## Discussion and Decision

Bogolia and Schafer make three arguments on appeal: (1) whether the trial court erred by denying the motion to strike Dr. Danielson's response to the motion for partial summary judgment; (2) whether the trial court erred by denying their partial motion for summary judgment because Dr. Danielson's claim is barred since he is required to look solely to Medicare for payment for the treatment he provided to Bogolia; and (3) whether the trial court erred by denying their partial motion for summary judgment because Dr. Danielson's claim against Schafer fails as a matter of law because she was a disclosed agent of Bogolia.

## I. Denial of Motion to Strike

Bogolia and Schafer mailed their motion for partial summary judgment on September 9, 2011, and it was received by the clerk of the court on September 13, 2011.  Dr. Danielson served his response to the motion on October 13, 2011.  Bogolia and Schafer contend that Dr. Danielson did not timely file his response to their motion for

partial summary judgment, so the trial court erred by denying their motion to strike his response. We agree.

Bogolia and Schafer's motion was served pursuant to Trial Rule 5(B)(2) when it was mailed, which was September 9, 2011, and it was filed pursuant to Trial Rule 5(F)(1) when it was delivered to the clerk of the court, which was September 13, 2011. Trial Rule 5(B)(2) states that service is complete upon mailing, so the time period within which Dr. Danielson had to respond to the motion for partial summary judgment began to run on September 9, 2011. Pursuant to Indiana Trial Rule 56(C), Dr. Danielson had thirty days after service of the motion for partial summary judgment to serve his response. Trial Rule 6(E) extends that deadline by three days since Bogolia and Schafer served their motion by mail. Any response was therefore due by October 12, 2011, thirty-three days after September 9, 2011, making Dr. Danielson's answer that was filed on October 13, 2011, untimely.

As the rules make clear, the thirty-day window begins to run as soon as service is complete, not when filing is complete. "No doubt the most important thought in relation to Rule 5 is that emphasis is clearly given to service of papers, and not to filing of papers. . . . It is the date of service rather than that of filing that is significant insofar as measuring time is concerned." William F. Harvey, 1 Indiana Practice: Rules of Procedure Annotated 426 (3d ed. 1999). The case law on this issue also indicates that the courts interpret the trial rule as written and allow parties thirty days from the time of service within which to respond to a motion for summary judgment. *See, e.g.*, *HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95, 98 (Ind. 2008) ("At no time within thirty days

*after service* of the plaintiff's motion for summary judgment did the defendants request any alteration of the time limits imposed by Indiana Trial Rule 56.") (emphasis added); *Farm Credit Servs. of Mid-America, FLCA v. Tucker*, 792 N.E.2d 565, 568 (Ind. Ct. App. 2003) ("Indiana Trial Rule 56(C) provides that after one party files a motion for summary judgment, 'an adverse party shall have thirty (30) days *after service* of the motion to serve a response and any opposing affidavits.'") (emphasis added); *Seufert v. RWB Med. Income Props. I Ltd. P'ship*, 649 N.E.2d 1070, 1072 (Ind. Ct. App. 1995) ("Trial Rule 56 requires that an adverse party designate evidence and material issues of fact in its 'response,' which must be filed within 30 days after the motion *is served*.") (emphasis added).

Therefore, any argument by Dr. Danielson that the thirty days within which he was able to file his response did not start running until the date the papers were filed with the court is without merit. Because Dr. Danielson failed to file his response within the proscribed time period, the trial court erred by denying Bogolia and Schafer's motion to strike his response.[1]

## II. Motion for Summary Judgment

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a

---

[1] We note that Dr. Danielson also argues that Bogolia and Schafer have not shown that their motion was served with the appropriate certificate of service. Appellee's Br. p. 10. However, Dr. Danielson admits that he was served. *Id.* at 8. He also raises this argument for the first time on appeal, so we find the argument to be waived. *Mid-States Gen. & Mech. Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 438 n.2 (Ind. Ct. App. 2004) ("An appellant who presents an issue for the first time on appeal waives the issue for purposes of appellate review.").

matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind. 2009). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007). Since Dr. Danielson's response to Bogolia and Schafer's motion for partial summary judgment has been stricken, we have also stricken his designated evidence. We will therefore not use his designated evidence in our decision, but will look only at the designated evidence that remains.

*A. Payment for Treatment*

Bogolia and Schafer next contend that the trial court erred by denying their partial motion for summary judgment because Dr. Danielson's claim is barred since he is required to look solely to Medicare for payment for the treatment he provided to Bogolia. Finding a genuine issue of material fact, we conclude that the trial court did not err by denying the motion for partial summary judgment on this ground.

It is undisputed that at the time he treated Bogolia, Dr. Danielson was a participating physician in the Medicare system, Appellant's App. p. 8; Appellant's Br. p. 8; Appellee's Br. p. 3, and his financial policy said that he would bill Medicare if the patient had met his deductible for the year.[2] As a participating physician, Dr. Danielson had voluntarily chosen to enter into an agreement with the Secretary of the United States

---

[2] Bogolia and Schafer argue that because Dr. Danielson's Financial Policy states that he accepted Medicare, he should have been required to file with Medicare since the terms of the contract were clear and unambiguous. They also argue that Dr. Danielson should be estopped from seeking a fee from anyone other than Medicare because they reasonably relied on the language of the Financial Policy and its representation that Dr. Danielson would bill Medicare. However, by accepting Medicare, Dr. Danielson also must follow the rules of Medicare, including the rules of when Medicare is a primary or secondary payer. We therefore find both of these arguments to be without merit.

Department of Health and Human Services to accept payment from Medicare for services provided to Medicare beneficiaries. 42 U.S.C.A. § 1395u(h)(1). Medicare would pay 80% of the cost of services, while the patient would pay no more than the remaining 20% as a copayment. 42 U.S.C.A. § 1395l(a)(1). Additionally, he must accept the Medicare payment as full payment for his services and could not bill the patient for any additional amounts other than the copayment. 42 U.S.C.A. § 1395u(18)(B). Therefore, since Medicare was Bogolia's insurer, and he had met his deductible for the year, Dr. Danielson was required to file a claim with Medicare for payment of the services he rendered to Bogolia, assuming Medicare was the primary payer.

However, in this case, Medicare would be a secondary payer if the medical bills arose as a result of an accident for which a liability insurance company would make a payment.[3] Under the Medicare regulations, payment "*may not* be made . . . with respect to any item or service to the extent that-- . . . (ii) payment has been made or can reasonably be expected to be made under a . . . *liability policy* or plan . . . ." 42 U.S.C.A. § 1395y(b)(2)(A) (emphases added). This is to effectuate "Congress's intent to make Medicare a secondary payer to liability insurance." *Parkview Hosp., Inc. v. Roese*, 750 N.E.2d 384, 390 (Ind. Ct. App. 2001), *trans. denied*.

It is uncontested by the parties that Bogolia's injuries resulted in a personal injury action. *See, e.g.*, Tr. p. 11, 18. Additionally, in Schafer's affidavit, she states that "Dr. Danielson's office sent a bill for $9690.00 to Paul Rossi, my father's attorney at the time of the injury, and that bill was forwarded to my father." Appellant's App. p. 56. That

---

[3] Since we are without any information of a liability insurance settlement, the issue of a lien on any such settlement is not ripe for our consideration.

8

there is a personal injury action and that Dr. Danielson sent the bill to an attorney after treatment for the injuries creates a question as to whether there has been or will be any settlement in the personal injury case. We are therefore without sufficient information to know if a liability insurer has already made or will make a payment toward Bogolia's medical treatment by making a settlement payment. This creates a genuine issue of material fact in regards to this issue, so the trial court did not err in denying Bogolia and Schafer's motion for partial summary judgment on this ground.

## B. Schafer as Bogolia's Agent

Finally, Bogolia and Schafer contend that Dr. Danielson's claim against Schafer fails as a matter of law because she was a disclosed agent of Bogolia. They argue that the trial court erred by not granting their partial motion for summary judgment on this issue because there is no genuine issue of material fact that Schafer was Bogolia's agent. We disagree.

An agency relationship is created when one person gives another the authority to act on his behalf. *Johnson v. Blankenship*, 679 N.E.2d 505, 507 (Ind. Ct. App. 1997), *trans. granted and summarily aff'd*, 688 N.E.2d 1250 (Ind. 1997). There are three elements necessary to create an actual agency relationship: "(1) manifestation of consent by the principal, (2) acceptance of authority by the agent, and (3) control exerted by the principal over the agent." *Demming v. Underwood*, 943 N.E.2d 878, 883 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. In order to create an apparent agency relationship, the principal must consent to its manifestation, represent its manifestation to a third party, and the third party must have a reasonable belief that someone else is an agent of the

9

principal. *Hope Lutheran Church v. Chellew*, 460 N.E.2d 1244, 1248 (Ind. Ct. App. 1984). If an individual is considered an agent and contracts on behalf of a disclosed principal, he is not personally liable to the other contracting party. *Hawkins v. Dorst Co.*, 116 N.E. 577 (Ind. 1917).

In this case, Schafer argues that she had an apparent agency relationship with Bogolia that she represented to Dr. Danielson when she signed the financial policy documents because Bogolia's hand was injured and he was unable to sign. However, Schafer signed the Financial Agreement and wrote "(daughter)" next to her name. Appellant's App. p. 53. The meaning of "(daughter)" is not clear on its face and raises an issue of fact as to whether there was an apparent agency relationship between Bogolia and Schafer.

Additionally, Schafer also argues that she signed the Financial Policy while in the emergency room and that she was informed by Dr. Danielson that it needed to be signed before Bogolia could receive treatment. *Id.* at 55. However, Bogolia received treatment in the emergency room on May 19, 2007, and the Financial Policy was dated May 22, 2007. This raises an issue of fact as to when Schafer actually signed the Financial Policy and when the Financial Policy became effective, which, in turn, raises the question of what charges Schafer could be responsible for if she is found to be financially liable for Bogolia's treatment. Based on this, the trial court did not err in denying Bogolia and Schafer's motion for partial summary judgment on this issue.

Affirmed.

MATHIAS, J., concurs.

BARNES, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID J. BOGOLIA and NIKKI SCHAFER, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 64A04-1201-CC-42 |
| | ) | |
| JOHN DANIELSON, M.D., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BARNES, Judge, concurring**

I concur in full with the majority opinion. I only write to vent my frustration with the legally mandated result.

The Medicare system was and is set up to allow the payment of fixed, tangible prices for services rendered to persons treated by physicians who accept Medicare. In the vast majority of cases, a Medicare-approved provider cannot and should not directly bill a Medicare beneficiary for the full cost of services provided. In fact, there is a statute expressly stating that by agreeing to be a Medicare provider, a doctor agrees "not to charge, except [for deductibles and co-insurance], any individual or any other person for

12

items or services for which such individual is entitled to have payment made . . . ." 42 U.S.C. § 1395cc(a)(1)(A).

An overwhelming majority of the time, Medicare reimbursements to physicians are based upon a fee schedule that falls well below the "going rate" for charged procedures. Regardless, physicians who agree to participate in Medicare generally must "accept Medicare's payment for services rendered." U.S. v. Awad, 551 F.3d 930, 933 (9th Cir. 2009), cert. denied. Here, Mr. Bogolia went to a physician, Dr. Danielson, who clearly held himself out as a doctor who accepted Medicare payments. Mr. Bogolia underwent the procedure, and Dr. Danielson billed him the full market amount for the treatment after declining to cash a check tendered by Medicare for presumably a much lesser amount.

Mr. Bogolia was seeking compensation in a lawsuit for the injuries to his hand and Dr. Danielson was aware of that fact. It does not appear that Dr. Danielson ever billed Medicare for the treatment provided to Mr. Bogolia. It does seem that Dr. Danielson is permitted to do what he did—assuming Mr. Bogolia has already received an insurance settlement—under the current guidelines adopted by the Centers for Medicare & Medicaid Services regarding Medicare as a secondary payer, which provide in part:

> [I]f the physician or other supplier pursues liability insurance,
> the physician or other supplier may charge beneficiaries
> actual charges, up to the amount of the proceeds of the
> liability insurance less applicable procurement costs but may
> not collect payment from the beneficiary until after the

13

proceeds of the liability insurance are available to the

beneficiary.

Medicare Secondary Payer (MSP) Manual, Chapter 2, § 40.2(D) (available at http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/msp105c02.pdf); see also Joiner v. Medical Center East, Inc., 709 So. 2d 1209, 1221 (Ala. 1998). We must defer to an agency's interpretation of the statutes and regulations the govern it. See Development Servs. Alternatives, Inc. v. Indiana Family & Soc. Servs., 915 N.E.2d 169, 181 (Ind. Ct. App. 2009), trans. denied. Despite my best efforts to the contrary, I can find no legal authority to come to a conclusion other than the one reached by the majority.

I also can find no parallel to Indiana Code Section 32-33-4-3, which allows hospitals to have a lien for "all reasonable and necessary charges for hospital care" against any settlement proceeds received by a patient, but which first requires the lien to be reduced by any available medical insurance proceeds and which limits a hospital's total lien to eighty percent of a settlement. Dr. Danielson is not a hospital, and here Mr. Bogolia pays the full freight for the doctor's charges, despite the fact that Medicare was clearly in play and contemplated as the payor by Mr. Bogolia.

It seems to me that if one holds himself out as a physician who will accept Medicare payments, performs a function that is Medicare covered, and is tendered payment from Medicare for that work, that is the social and legal bargain Medicare contemplates. I also note that under the holding of Stanley v. Walker, 906 N.E.2d 852,

14

858 (Ind. 2009), evidence of the discounted Medicare reimbursement rate for Bogolia's procedure—not the full market rate Dr. Danielson wishes to collect—would have been relevant and admissible in valuing Mr. Bogolia's tort claim and almost certainly would have been considered by a liability insurer in determining the reasonable value of medical services that he received. As a practical matter, it does not seem Mr. Bogolia has or will hit the proverbial "jackpot" on his negligence claim—possibly, not even enough to cover Dr. Danielson's bill of $9690.00.[4]

The majority has the law right in my view, much to my chagrin. Thus, I grudgingly concur.

---

[4] There is reference in the record—albeit in evidence designated by Dr. Danielson that the trial court properly struck—that Mr. Bogolia received a settlement of approximately $8,000.00 for his claim.